**No. 26-1648**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

IAN SMITH, ET AL.
*Plaintiff-Appellees*,

v.

CALIFORNIA APARTMENT ASSOCIATION
*Movant-Appellant*.

On Appeal from the United States District Court
for the Northern District of California
No. 4:19-cv-05398-JST
Hon. Jon S. Tigar

---

# APPELLEES' OPPOSITION TO MOTION TO EXPEDITE

---

Sean Betouliere (CA Bar No. 308645)
Thomas Zito (CA Bar No. 304629)
Emily Roznowski *(Pro Hac Vice)*
Disability Rights Advocates
2001 Center Street, Third Floor
Berkeley, California 94704-1204
(510) 972-9909
sbetouliere@dralegal.org

*(continued on next page)*

Michael Rawson (CA Bar No. 95868)
Craig Castellanet (CA Bar No. 176054)
Public Interest Law Project
449 15th St., Suite 301
Oakland, CA 94612-06001
Tel. (510) 891-9794
mrawson@pilpca.org

*Attorneys for Appellees*

## I. INTRODUCTION

California Apartment Association ("CAA") seeks to expedite briefing before the Ninth Circuit, after waiting until the eleventh hour to move to intervene in a nearly seven-year-old case. Because CAA agrees that this appeal will not become moot on a standard briefing schedule, and because it cannot show a risk of irreparable harm or otherwise establish good cause for an expedited schedule, the Court should deny its motion.

## II. FACTUAL AND PROCEDURAL HISTORY

The City of Oakland's Rent Adjustment Program ("RAP" or "Program"), colloquially known as "rent control," provides tens of thousands of City tenants with stability and protection from displacement, by setting a limit on how much the rent for their homes can increase each year. However, for decades, people with disabilities who need accessible housing have been denied an meaningful opportunity to access these same protections, because few if any of the City's rent-controlled units are accessible.

This means that Plaintiffs and other people who need accessible housing are either shut out of the rent control Program entirely, because they are not able to live in any of the units that it covers, or that they are forced to endure the daily disability-related hardships of life in an inaccessible covered unit just to access the Program's protections—a "compromise" that can mean struggling up and down

steps, coping every day with an unusable kitchen, or having to crawl into their bathroom on their hands and knees, because a wheelchair cannot fit.

Plaintiffs Ian Smith and Mitch Jeserich—two Oakland renters who have mobility disabilities—filed suit against the City in 2019 under the Americans with Disabilities Act, seeking to ensure that they and other people who need accessible housing finally have a meaningful opportunity to access the protections against excessive annual rent increases that Oakland's rent control Program provides.

In August 2025, the District Court granted partial summary judgment in favor of Plaintiffs, finding no genuine dispute that they and others who need accessible housing are currently denied a meaningful opportunity to benefit from Oakland's rent control Program. *See Smith v. City of Oakland*, No. 19-CV-05398-JST, 2025 WL 2444450, at *4-5 (N.D. Cal. Aug. 25, 2025).

At the District Court's invitation, the California Attorney General intervened to brief the issue of whether a remedy required by the ADA to address discrimination can preempt provisions of California's Costa-Hawkins Rental Housing Act, Cal. Civ. Code § 1954.50 *et seq*, in the context of this case. *See* ECF Nos. 157 (certifying question to California Attorney General), 162 (notice of intent to intervene by California Attorney General), 178 (statement of California Attorney General regarding certified question). The California Attorney General determined, correctly, that if an expansion of the rent control Program's current

January 1, 1983 cutoff date is found to be both reasonable and necessary under the ADA, any provisions of Costa-Hawkins that would otherwise prevent such a remedy are likely preempted. *See* ECF No. 178.

The remaining questions in the case are whether Plaintiffs' requested modification—to extend the Program's protections to units that were required to be accessible under state or federal law, but that were built after the current January 1, 1983 cutoff date for coverage (either by bringing in all existing units immediately, or by bringing units that should be accessible into the Program according to a "rolling" deadline)—is reasonable, or whether it would be a fundamental alteration of Oakland's Program. *See Smith v. City of Oakland*, 2025 WL 2444450, at *5-7.

Contrary to appellant California Apartment Association (CAA)'s sky-is-falling rhetoric, there is no answer to these questions that would result in the wholesale preemption of the Costa-Hawkins Rental Housing Act throughout the State of California. Rather, Plaintiffs' requested reasonable modification would preempt only two provisions of Costa-Hawkins—sections 1954(a)(1) and (a)(2)[1]—in the context of the rent control Program administered by a single California city.

[1] Section 1954.52(a)(2) of Costa-Hawkins allows landlords to set initial and subsequent rents for units "already exempt" from a city rent control program, and section 1954.52(a)(1) does the same for all units certified for occupancy after February 1, 1995—making both sets of units effectively exempt from Oakland's rent control Program, unless these provisions are found to be preempted by the requirements of the Americans with Disabilities Act in the specific context of this case.

A ruling finding this remedy to be reasonable and necessary would be limited to the facts of this case, and the specific lack of meaningful and equal access to Oakland's rent control Program that Plaintiffs have pled and proven. All other provisions of Costa Hawkins would remain in effect in Oakland, and there would be no effect on the application of Costa Hawkins in other jurisdictions at all.

CAA has little, if anything, to add to the underlying litigation. It has represented to the District Court that it "will not seek to reopen discovery and will not present or identify any witnesses at trial," and that its proposed summary judgment briefing will rely only on the legislative history of Costa-Hawkins and a handful of "declarations already submitted in support of its intervention motion."[2] ECF No. 169 at 4. The legislative history of Costa-Hawkins has already been provided to the District Court by California's Attorney General, who is already a party to the case. *See* ECF Nos. 162 and 178. The limited information contained in CAA's declarations is likewise already before the District Court, making CAA's intervention superfluous at best. *See Prete v. Bradbury*, 438 F.3d 949, 958 (9th Cir. 2006) (denying intervention where would-be intervenors "may have some specialized knowledge," but had "provided no evidence to support their

---

[2] Given the minimal input CAA proposes to provide, it is unclear why it does not simply seek leave to file an amicus brief before the District Court, which Plaintiffs would not oppose.

speculation that [the government] lacks comparable expertise").

As the District Court correctly observed below, CAA "does not explain what knowledge it brings to bear that other parties cannot access and why that knowledge relates to the reasonableness of an accommodation," nor does it "explain any viable argument it might make that the Supremacy Clause does not apply under these circumstances and therefore that ADA preemption will not apply." *Smith v. City of Oakland*, No. 19-CV-05398-JST, 2026 WL 708318, at *7-8 (N.D. Cal. Mar. 13, 2026).

## III. **ARGUMENT**

CAA has not demonstrated good cause to justify an expedited briefing schedule. *See* Ninth Circuit Rule 27-12. CAA has not shown a risk of irreparable harm, and it admits that its appeal is not at risk of becoming moot. *See* Mot. to Expedite at 14-15. Because CAA has not met the standard for expedited briefing, the Court should deny its motion.

The supposed "urgency" of CAA's appeal is entirely of its own making. As the District Court correctly recognized, CAA was "obligated to seek intervention as soon as it should have been aware that its interests would [not] be protected adequately by the parties." *Smith v. City of Oakland*, No. 19-CV-05398-JST, 2026 WL 708318, at *6 (N.D. Cal. Mar. 13, 2026) (citation and quotation marks omitted). "This was true, at the latest, in February 2021, when CAA's Executive

Vice President of Legal Affairs learned about this litigation." *Id.* However, "[a]lmost five more years passed before CAA moved to intervene." *Id.* As the District Court correctly found below, CAA offered no credible excuse for this delay. *See id*. at *5-7.

If CAA had not waited until the eleventh hour to seek intervention—without any adequate explanation for that delay—it would not now be faced with a self-created supposed conflict between this Court's ordinary schedule for consideration of its intervention-related appeal, and the schedule for consideration of final dispositive motions, below.

CAA argues that it will face "irreparable harm" if its appeal is not heard on an expedited schedule, *see* Ninth Circuit Rule 27-12, but its own motion concedes that the harm would not be irreparable, because this Court could "vacate any adverse judgment that is entered" while its appeal is pending.

As a practical matter, a judgment below is unlikely to enter before CAA's appeal is heard and decided, even on the normal briefing schedule already set, which requires Appellees to file their answering brief on May 28, 2026. *See* Dkt. No. 2.1. While the District Court has set a summary judgment hearing on all remaining issues for the same day, May 28, 2026, actual judgment will almost certainly not issue immediately—meaning there will be time for this Court to issue an order on CAA's appeal before final judgment. Should this Court ultimately

decide in CAA's favor—which, given the District Court's well-reasoned decision denying intervention, it should not do—it could order the District Court to permit CAA to file the single summary judgment brief CAA requested below along with supplemental reply briefing and oral argument. *See* ECF No. 181 at 3. While this may be slightly less convenient for all involved, it is hardly an irreparable harm.

## IV. <u>CONCLUSION</u>

For the reasons stated above, CAA's request for an expedited briefing schedule should be denied. Alternatively, should the Court determine that expedited briefing is appropriate, it should deny CAA's request for a reply brief, which is not currently permitted by this Court's schedule, and which will only delay resolution of CAA's appeal.

DATED: March 25, 2026

DISABILITY RIGHTS ADVOCATES
SEAN BETOULIERE
THOMAS ZITO
EMILY ROZNOWSKI

By: *s/ Sean Betouliere*
Sean Betouliere
Attorneys for Appellees

## STATEMENT OF RELATED CASES (CIRCUIT RULE 28-2.6)

There are no other cases which are related to the instant matter.

DATED: March 25, 2026

DISABILITY RIGHTS ADVOCATES
SEAN BETOULIERE
THOMAS ZITO
EMILY ROZNOWSKI

By: *s/ Sean Betouliere*
Sean Betouliere
Attorneys for Appellees

## CERTIFICATE OF COMPLAINCE

I certify that this brief complies with the length limits permitted by Ninth Circuit Rule 32-1. The brief is 1,545 words, excluding the portions exempted by Fed. R. App. P. 32(f). The brief's type size and type face com-ply with Fed. R. App. P. 32(a)(5) and (6).

Dated: March 25, 2026

*/s/ Sean Betouliere*
Sean Betouliere

*Counsel for Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2026, the foregoing brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit through the Court's AMCS system. I certify that all participants in the case who are registered AMCS users will be served by the appellate AMCS system.

*/s/ Sean Betouliere*
Sean Betouliere

*Counsel for Appellees*