Case No. 26-1648

# In the United States Court of Appeals For the Ninth Circuit

**IAN SMITH,** *et al.*

*Plaintiff-Appellees,*

*v.*

**CITY OF OAKLAND**, and
**ROB BONTA, California Attorney General,**

*Defendants,*

*v.*

**CALIFORNIA APARTMENT ASSOCIATION,**

*Movant-Appellant.*

---

## APPELLANT'S OPENING BRIEF

---

On Appeal from the United States District Court
for the Northern District of California
The Honorable Jon S. Tigar, Presiding
District Court Case No. 4:19-cv-05398-JST

NIELSEN MERKSAMER LLP
Christopher E. Skinnell (SBN 227093)
2350 Kerner Boulevard, Suite 250
San Rafael, California 94901
Tel:  (415) 389-6800
Fax: (415) 388-6874
Em: cskinnell@nmgovlaw.com
*Attorneys for Movant-Appellant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................... 7

JURISDICTIONAL STATEMENT ......................................................... 12

ISSUES PRESENTED ............................................................................ 13

STATEMENT OF THE CASE ................................................................. 14

SUMMARY OF THE ARGUMENT ........................................................ 22

ARGUMENT ........................................................................................... 25

    I.    STANDARD OF REVIEW ............................................................ 25

    II.    THE DISTRICT COURT ERRED IN DENYING APPELLANT INTERVENTION OF RIGHT .................................... 26

        A.    The District Court Erred in Holding That CAA's Motion Was Not Timely ................................... 27

            1.    Stage of proceedings: Appellant properly sought to intervene at the commencement of a "new stage" in the litigation, having disclaimed any intention of reopening settled issues ................. 27

            2.    The trial court correctly found that the prejudice to the existing parties would be "minimal" ....................................................... 31

            3.    Especially given the lack of prejudice, denying CAA's motion based on the length of, and reason for, delay was also error ........................................................... 32

B.    The District Court Erred in Holding That CAA's Interests in Defending Costa-Hawkins Would be Adequately Represented by the Attorney General and the City of Oakland Going Forward ................................ 36

    1.    The district court held CAA to an unduly high standard for showing inadequacy of representation ........................... 37

    2.    Even under the higher standard the district court was wrong to hold that the Attorney General and City of Oakland adequately represent CAA's interests ........................................................... 42

III.   THE DISTRICT COURT ALSO ERRED IN DENYING APPELLANT PERMISSIVE INTERVENTION ................................ 48

CONCLUSION ................................................................. 48

CERTIFICATE OF COMPLIANCE (Form 8) ........................... 50

STATEMENT RE RELATED CASES (Form 17) .................................. 51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003) ..................................................... 26, 37

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.,*
  712 F.3d 1349 (9th Cir. 2013) ........................................................ 48

*Cal. Dep't of Toxic Substances Control v. Commercial Realty
  Projects, Inc.,*
  309 F.3d 1113 (9th Cir. 2002) ........................................................ 27

*Citizens Allied for Integrity & Accountability, Inc. v. Miller,*
  No. 1:21-cv-00367-DCN, 2022 WL 1442966 (D. Idaho May
  5, 2022) ....................................................................................... 39, 41

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
  647 F.3d 893 (9th Cir. 2011) ........................................................ 13, 25

*Cty. of Orange v. Air Cal.,*
  799 F.2d 535 (9th Cir. 1986) ......................................................... 25

*Easley by Easley v. Snider,*
  36 F.3d 297 (3d Cir. 1994) ............................................................ 47

*Forest Conservation Council v. United States Forest Serv.,*
  66 F.3d 1489 (9th Cir. 1995) ........................................................ 39, 41

*Haspel & Davis Milling & Planting Co. v. Bd. of Levee
  Comm'rs,*
  493 F.3d 570 (5th Cir. 2007) ......................................................... 35

*Kalbers v. United States DOJ,*
  22 F.4th 816 (9th Cir. 2021) .................................................... *passim*

*League of United Latin Am. Citizens v. Wilson,*
  131 F.3d 1297 (9th Cir. 1997) ...................................................... 12, 13

4

*Mich. State v. Miller*,
   103 F.3d 1240 (6th Cir. 1997).............................................................. 40

*NCR Props., LLC v. City of Berkeley*,
   89 Cal. App. 5th 39 (2023) ................................................................. 14

*PGA Tour, Inc. v. Martin*,
   532 U.S. 661 (2001)............................................................................ 47

*Prete v. Bradbury*,
   438 F.3d 949 (9th Cir. 2006)...................................................... *passim*

*Sagebrush Rebellion v. Watt*,
   713 F.2d 525 (9th Cir. 1983).......................................................... 12, 41

*Sequoia Forestkeeper v. La Price*,
   No. 1:16-CV-0759 AWI JLT, 2017 WL 56655 (E.D. Cal.
   Jan. 4, 2017)...................................................................................... 40

*Sierra Club v. Espy*,
   18 F.3d 1202 (5th Cir. 1994)............................................................... 40

*Smith v. City of Oakland*,
   339 F.R.D. 131 (N.D. Cal. 2021) ........................................................ 18

*Smith v. City of Oakland*,
   612 F. Supp. 3d 951 (N.D. Cal. 2020) .................................. 15, 16, 29

*Smith v. City of Oakland*,
   No. 19-cv-05398, 2025 LX 353773 (N.D. Cal. Aug. 25,
   2025)..................................................................................................... 17

*Smith v. City of Oakland*,
   No. 19-cv-05398-JST, 2021 U.S. Dist. LEXIS 266934 (N.D.
   Cal. Sep. 3, 2021) .............................................................................. 16

*Smith v. L.A. Unified Sch. Dist.*,
   830 F.3d 843 (9th Cir. 2016)........................................... 25, 29, 30, 31

*Trbovich v. United Mine Workers*,
   404 U.S. 528 (1972)........................................................................ 37, 41

5

*United States v. Alisal Water Corp.,*
370 F.3d 915 (9th Cir. 2004) .................................................... 10, 26, 29

*United States v. Oregon,*
745 F.2d 550 (9th Cir. 1984) ............................................... 27, 29, 32

*Where Do We Go Berkeley v. Cal. DOT,*
32 F.4th 852 (9th Cir. 2022) ........................................................ 47

**Statutes**

28 U.S.C. § 1291 ................................................................... 12

28 U.S.C. § 1331 ................................................................... 12

Americans with Disabilities Act ................................................ *passim*

Title II ............................................................................ 7, 15, 30

Fair Housing Act Amendments of 1988 ................................................ 15

42 U.S.C. § 3604(f)(3)(C) ................................................................ 15

Costa-Hawkins Rental Housing Act,
Cal. Civ. Code §§ 1954.50-1954.535 ........................................ *passim*

§ 1954.52(a)(1) ................................................................... 14

§ 1954.52(a)(2) .......................................................... 14, 17, 34

**Other Authorities**

Fed. R. Civ. Proc. 24 .................................................................. 26

Fed. R. Civ. Proc. 24(b) .............................................................. 48

Fed. R. Civ. Proc. 24(b)(3) ........................................................ 48

## **INTRODUCTION**

This appeal challenges the district court's refusal to permit the California Apartment Association ("CAA") to intervene in litigation that threatens the enforceability of certain key provisions of the Costa Hawkins Rental Housing Act, Cal. Civ. Code §§ 1954.50-1954.535 ("Costa-Hawkins"), a landmark law governing rental housing in California, on the ground that those provisions are purportedly preempted by Title II of the Americans with Disabilities Act. Without CAA's participation, there will be no full-throated defense of this important state law, which the voters of California have reaffirmed by 60%-40% margins at three different statewide elections in 2018, 2020, and 2024, and the district court was wrong to deny intervention.

As the district court acknowledged, "CAA was a principal sponsor of Costa-Hawkins in 1995 and has worked to defend the law since, including by lobbying the state legislature, litigating in the courts and filing amicus briefs, and raising money to oppose ballot measures that would have repealed it." (1-AER-003.) By contrast, the current defendants, in whose hands the defense of Costa-Hawkins will be left in CAA's absence are: (1) the City of Oakland, which in mid-2025 informed the district court that it (the City) "is in no position to defend against a

7

modification to [Costa-Hawkins under the ADA]" due to the City Council's opposition to Costa-Hawkins (2-AER-268) and (2) California Attorney General Rob Bonta, who intervened in November 2025—at the same time CAA was seeking intervention—at the district court's invitation. This Attorney General also has a history of opposing Costa-Hawkins. Prior to assuming his current office, then-Assemblymember Bonta proposed multiple bills (which CAA successfully defeated) that would have repealed or substantially weakened the law. Furthermore, in his lone anticipated filing in this case on the merits, the Attorney General essentially conceded Plaintiffs' claim that Costa-Hawkins should be preempted by the ADA.

With neither the City nor the Attorney General committed to vigorously defending Costa-Hawkins' legality, CAA stands willing to do so. There is also no guarantee that either of the current defendants would be inclined to appeal an adverse ruling, particularly to the extent it turns on preemption of Costa-Hawkins, leaving the interests of CAA's members unprotected.

The district court agreed that CAA and its members have "significant protectable interests" in the enforceability of Costa-Hawkins and that those interests are at risk of being impaired by a ruling in

Plaintiffs' favor—two of the four criteria a would-be intervenor of right must establish. Indeed, the Plaintiffs didn't dispute those. The district court also held that any prejudice to the existing parties of allowing CAA to intervene would be "minimal," because CAA did not seek to re-open or re-litigate any of the proceedings that have already taken place. (1-AER-008.)

The court nevertheless denied intervention on the twin grounds that (1) CAA's motion was untimely because a number of proceedings have already taken place and because CAA knew of the litigation's existence as of 2021, and (2) the existing parties will adequately represent CAA's interests. These holdings are erroneous and, indeed, contradict one another.

Regarding timeliness, "'Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, *not the date it learned of the litigation.*'" *Kalbers v. United States DOJ*, 22 F.4th 816, 823 (9th Cir. 2021) (quoting *United States v. Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996)) (italics added by *Kalbers* Court). The district court concluded that CAA should have known that its interests would not be protected by the City

of Oakland as far back as 2021, because it was purportedly unreasonable for CAA to assume a local government would defend a State law.

Yet, as the district court noted, between 2019 and 2025, the City of Oakland "consistently defended CAA's members' economic interests in arguing that the ADA has not been violated and the existing RAP should remain unmodified." (1-AER-012.) It wasn't until mid-2025, when the City explicitly informed the district court that it would not, and could not, defend Costa-Hawkins in further proceedings that the calculus changed. When CAA learned of that change in circumstances in mid-October 2025, and learned that the litigation was about to enter a new "stage" in which the constitutionality of Costa-Hawkins would be joined in earnest,[1] it moved expeditiously—in just a few short weeks, during the period when Plaintiffs and the City were waiting to learn if the Attorney General would accept the invitation to participate in the case and no proceedings were underway—to protect its interests by seeking intervention. Thus, the district court was wrong to conclude that CAA's application was untimely.

---

[1] *See United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) ("*Alisal*") ("a party's interest in a specific phase of a proceeding may support intervention at that particular stage of the lawsuit," notwithstanding substantial prior litigation activity).

10

The district court also held that intervention should be denied because the City and the Attorney General will adequately protect CAA's interests going forward. Yet regarding the City, it is difficult to see how its representation of CAA's interests before 2025, when it actually was defending the law, was so inadequate as to require CAA to intervene sooner, but the City's representation now, when it has affirmatively told the Court it can't defend Costa-Hawkins, is adequate to prevent intervention at this time. That is precisely backwards.

As for the Attorney General, he has already filed his only anticipated memorandum in this case on February 20, 2026 (*see* 2-AER-115-135), and it simply does not contain a defense of Costa-Hawkins. To the contrary, it agrees with Plaintiffs that Costa-Hawkins may be preempted. To appreciate the extent to which this is the case, one need look no further than the brief supporting Plaintiffs' supplemental motion for a judgment ordering the preemption of Costa-Hawkins, filed on March 27. (2-AER-081-111.) That brief relies extensively on the Attorney General's memorandum. (*See, e.g.,* 2-AER-097 ["The California Attorney General's brief further supports the facial reasonableness of modifying the current January 1983 cutoff date for City rent control to bring in

11

later-built units that were required to be accessible—specifically, by adopting a 'rolling' 15-year deadline for inclusion of such units"].)

At a minimum, it cannot plausibly be said that either the Attorney General or the City "will undoubtedly make all of the intervenor's arguments." *Sagebrush Rebellion v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983). CAA proposes to argue that Costa-Hawkins is not preempted by the ADA. (*See* 2-AER-016-049 [CAA's proposed brief].)

The district court's refusal to allow CAA to intervene in the proceedings below was legal error and should be reversed.

## **JURISDICTIONAL STATEMENT**

The district court has jurisdiction of the underlying action pursuant to 28 U.S.C. § 1331 (federal question), based on Plaintiffs' allegation that the City of Oakland's Rental Adjustment Program violates the Americans with Disabilities Act.

This Court has jurisdiction to review the denial of CAA's motion to intervene as of right as an appealable "final decision" under 28 U.S.C. § 1291. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

As for permissive intervention, this Court has jurisdiction of an "'appeal of a denial of permissive intervention [only] if the trial court has abused its discretion.' [Citation.] That is, in determining its jurisdiction, a reviewing court must—despite the seemingly 'cart-before-the-horse' nature of the inquiry—*first* decide whether the district court abused its discretion in denying the motion. If it finds an abuse of discretion, it retains jurisdiction and *must* reverse; if it determines, on the other hand, that no abuse of discretion has occurred, it *must* dismiss the appeal for want of jurisdiction." *Id.* at 1307-08.

The Court "need not reach the issue of permissive intervention if [it] determine[s] that intervention as of right was improperly denied." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 896 (9th Cir. 2011).

## ISSUES PRESENTED

Whether the district court erred in denying CAA's motion to intervene in this action to defend the constitutionality of Costa-Hawkins, both as a matter or right and by permission?

13

## STATEMENT OF THE CASE

"The Legislature enacted Costa-Hawkins in 1995 to moderate what it considered the excesses of local rent control." *NCR Props., LLC v. City of Berkeley*, 89 Cal. App. 5th 39, 47 (2023). As reflected in Costa-Hawkins' legislative history, one of the chief policy criticisms of rent control that the Legislature sought to address in that Act is that it discourages development of new housing by making it less financially viable. For that reason, Costa-Hawkins included a provision meant to encourage new construction by permanently preempting local rent control rules as to new units,[2] and it "grandfathers in" units in preexisting rent control jurisdictions—like Oakland—that were built in reliance on parallel exemptions in the local laws. *NCR Properties*, 89 Cal. App. 5th at 51-52. Specifically, Civil Code § 1954.52(a)(1) provides that any rental unit receiving a certificate of occupancy after February 1, 1995, is categorically exempt from local rent control rules, and Civil Code § 1954.52(a)(2) provides that any then-existing building that was exempt from a local rent control ordinance under a "new construction" exemption

---

[2] *See, e.g.,* Assem. Floor Analysis, Concurrence in Sen. Amend. to Assem. Bill No. 1164 (1995–1996 Reg. Sess.) July 24, 1995, p. 5 (exemption "necessary to encourage construction of much needed housing units, which is discouraged by strict local rent controls").

14

already in effect would remain exempt. Under the latter provision, any building built in Oakland after 1983 is exempt from the rent control provisions of Oakland's "Rental Adjustment Program" (*i.e.*, "RAP").

In 2019, Plaintiffs filed a suit in the Northern District challenging the RAP as violating Title II of the Americans with Disabilities Act on the ground that individuals with mobility disabilities in Oakland are denied equal access to the RAP because units built prior to 1991, when the Fair Housing Act Amendment's accessible design standards for multi-family construction took effect, *see* 42 U.S.C. § 3604(f)(3)(C), were not required to be accessible, so very few of the rent-controlled units in Oakland are. Plaintiffs seek to extend the City's rental restrictions to post-1983 units that are currently exempt.

The City of Oakland moved to dismiss the Complaint, and the district court denied that motion in 2020. *Smith v. City of Oakland*, 612 F. Supp. 3d 951 (N.D. Cal. 2020) (3-AER-348-465). Though the City had historically opposed the limitation on its authority that Costa-Hawkins represents, nothing in its briefing suggested that it would not defend the law; indeed, it expressly relied on Costa-Hawkins, arguing (for example), that "modifying the [RAP] to apply rent control to newer units, in

15

violation of state law, is not a reasonable modification" under the ADA. (*See* 3-AER-392, lines 21-22.)

Notwithstanding its reliance on Costa-Hawkins, the City also suggested that the district court invite the Attorney General to intervene to defend Costa-Hawkins against preemption, because "in nearly every preemption case cited by Plaintiffs, the plaintiff sued the state body charged with implementing the state law—not a local entity required to comply with state law." The court declined the City's proposal in part on the ground that "the preemption question [wa]s not actually before the Court." 612 F. Supp. 3d at 967 n.9.

The district court's subsequent order granting class certification mentioned Costa-Hawkins only once in passing, *Smith v. City of Oakland*, 339 F.R.D. 131, 135 (N.D. Cal. 2021) (3-AER-300-304), and its 2021 order denying the City's motion for judgment on the pleadings, entered later that year, didn't mention it at all. *Smith v. City of Oakland*, No. 19-cv-05398-JST, 2021 U.S. Dist. LEXIS 266934 (N.D. Cal. Sep. 3, 2021) (2-AER-272-274). The City's briefing on those two motions

contained no indication that it would not defend the law—indeed, it barely discussed Costa-Hawkins at all.[3]

Thereafter, the case was largely held in abeyance for several years for the parties to engage in settlement discussions.

On August 25, 2025, the district court entered an order denying the City's motion for summary judgment on the applicability of the ADA and granting the Plaintiffs' cross-motion. *Smith v. City of Oakland*, No. 19-cv-05398, 2025 LX 353773 (N.D. Cal. Aug. 25, 2025) (2-AER-210-221). With respect to Costa-Hawkins, the district court held that while the ADA *can* preempt state law, the record was inadequate to resolve whether the ADA should preempt the Costa-Hawkins Act *in this case*, particularly since the City, in its briefing on the motion, had apprised the court—for the first time—that "the Oakland City Council ha[d] repeatedly demonstrated its opposition to section 1954.52(a)(2) [and, t]herefore, the City *is in no position to defend against a modification to section 1954.52(a)(2)*." *Id.* at *17 (quoting ECF No. 141 at 28 [2-AER-268]; emphasis added). The court therefore accepted the previously-rejected

---

[3] *See* 3-AER-305-333 (City's opposition to class certification—isolated passing references to Costa-Hawkins), 2-AER-281-288 (City's motion for judgment on the pleadings—no mention whatsoever) and 2-AER-274-280 (City's reply in support of motion for judgment on the pleadings—a single reference in footnote 1).

proposal to invite the Attorney General to provide his views on preemption of Costa-Hawkins.

Upon learning of that ruling, and mere days after the Attorney General indicated that he would accept the district court's invitation to intervene, CAA moved to also intervene in this action of right, or alternatively, by permission, to defend Costa-Hawkins. California's Attorney General, Rob Bonta, had previously introduced legislation to significantly weaken—and, indeed, outright repeal—Costa-Hawkins when he served in the California Legislature. *See, e.g.,* Assem. Bill 1506 (2017-2018 Reg Sess.) (proposal to repeal Costa-Hawkins, coauthored by then-Assemblymember Bonta); Assem. Bill 36 (2019-2020 Reg. Sess.) (proposal to significantly narrow the "new construction" exemption, coauthored by then-Assemblymember Bonta).[4]

---

[4] While CAA didn't move to intervene until a few days after the Attorney General had indicated his intention to do so, CAA initiated the process—reaching out to the existing parties to seek their views on intervention—*before* that time, and before it was even known whether the Attorney General would accept the court's invitation. (*See* 2-AER-162.) Moreover, though the Attorney General's decision to intervene suggested he would provide a defense of Costa-Hawkins, Mr. Bonta's prior history still gave CAA reason to continue pursuing intervention even after the Attorney General intervened—a reason that was vindicated by subsequent events.

18

CAA, meanwhile, was a sponsor of the Act in 1995 and has spent tens of millions of dollars defending the law in the intervening years in the Legislature (successfully opposing the Bonta legislation), in the courts, and at the ballot box, sponsoring a committee to defend the Act against initiatives that sought to repeal it at the 2018, 2020 and 2024 statewide elections. (*See* 2-AER-180-184 [Declaration of Thomas K. Bannon].)

Plaintiffs opposed CAA's intervention. The City of Oakland and the Attorney General took no position. (1-AER-002.) As part of its motion, CAA averred that it would abide by any briefing schedule set by the court and would not seek delay. (1-AER-007.)

On February 20, 2026, while CAA's motion was pending, the Attorney General filed a "Statement of California Attorney General Regarding Certified Constitutional Question [157]" (2-AER-115-135 [hereafter "Attorney General's Statement"]), which concedes, "[I]f the ADA requires an expansion of the RAP's cutoff date, then **the Costa-Hawkins Act is likely preempted** by the ADA." (2-AER-127 [emphasis added].) That contention hews more closely to Plaintiffs' position than a defense of Costa-Hawkins. To the extent the Attorney General's

19

Statement advances the cause of Costa-Hawkins, it is merely to posit a form of relief that purportedly "conflicts less severely." (2-AER-133.)

On March 13, 2026, the district court entered an order denying CAA's motion to intervene. (1-AER-002-014.) The district court found that two of the four criteria for intervention of right were met, having not been challenged by the Plaintiffs. Those criteria are that CAA and its members have significant protectable interests in the enforceability of Costa-Hawkins and that, in light of the court's August 25 ruling, those interests are at risk of being impaired by an adverse ruling in this case. (1-AER-005-006.) However, the Court denied the motion based on the conclusion that (1) CAA's motion was untimely, even though it acknowledged that the likely prejudice to the parties of allowing intervention—which this Court has held is "the most important consideration in deciding whether a motion for intervention is untimely"[5]—was "minimal" (1-AER-008) and (2) the existing parties adequately represent CAA's interests, despite those parties' clear unwillingness to defend the law.

CAA filed this appeal the first court day after the district court's order denying intervention was denied.

---

[5] *Kalbers*, 22 F.4th at 823.

On March 18, the district court issued an order setting the following briefing schedule for consideration of the proposed preemption of Costa-Hawkins:

- Plaintiffs' supplemental motion for judgment on the issue of preemption due 3/27/2026.

- City's opposition due 4/10/2026.

- Plaintiffs' reply due 4/24/2026.

- Hearing set for 5/28/2026 at 02:00 PM

(ECF No. 184.)

On April 10, 2026—the same day the City filed its opposition to Plaintiffs' supplemental opposition (*see* 2-AER-050-080)—CAA moved for permission to file an amicus brief in the district court in defense of Costa-Hawkins. (2-AER-016-049.) Neither the City of Oakland nor the Attorney General opposed that motion (*see* ECF No. 196-1), and the Plaintiffs filed a notice of conditional non-opposition, asking that they be permitted to file a ten-page reply within 14 days of the date the district court ordered the brief's filing. (ECF No. 198.) On April 23, the district court granted CAA's request and gave Plaintiffs the fourteen days to respond that they sought. (ECF No. 199.)

21

## SUMMARY OF ARGUMENT

All the parties below conceded—and the district court expressly held—that CAA met two of the four criteria for intervention of right: a significant protectable interest in the in the subject matter of this case and a significant risk of those interests being impaired by an adverse judgment. The district court nevertheless denied CAA's motion for intervention as of right, because it held that CAA's motion was untimely and the existing defendants—the Attorney General and the City of Oakland—would adequately represent CAA's interests. Those holdings were erroneous.

As for the question of whether CAA's motion to intervene was timely, under this Court's case law "'[d]elay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, *not the date it learned of the litigation.*'" *Kalbers*, 22 F.4th at 823 (quoting *United States v. Wash.*, 86 F.3d at 1503) (italics added by *Kalbers* Court). The district court acknowledged that prior to mid-2025, "the City [of Oakland] ha[d] consistently defended CAA's members' economic interests in arguing that the ADA has not been violated and the existing RAP should remain unmodified." (1-AER-012.) Thus, though CAA knew of the existence of

22

this litigation in 2021, it did not unduly delay in seeking to intervene in this litigation while the City defended those interests, and the district court's holding to the contrary was an error of law.

In late-2025, CAA learned that the City had expressly advised the district court that due to the city council's opposition to Costa-Hawkins, the City "is in no position to defend against a modification to" that state law. (2-AER-268.) Upon learning of that change, and upon learning that the case would be entering a new phase in which the question of Costa-Hawkins' preemption would be squarely joined for the first time, CAA moved promptly to intervene. Its motion was, therefore, timely, especially in light of the district court's recognition that the prejudice to the existing parties of allowing CAA to intervene—the "most important" factor bearing on the question of timeliness, *see Kalbers*, 22 F.4th at 823, would be "minimal." (1-AER-008.)

As for the district court's conclusion that the existing defendants— the Attorney General and the City—would adequately represent CAA's interests going forward, the district court applied an unduly stringent test for adequacy that does not apply here, but even if it did, CAA met even the more stringent burden, and the district court's contrary holding was error as well.

As a straightforward factual matter, the Attorney General has not defended the legality of Costa-Hawkins. Indeed, he has essentially conceded that it might appropriately be preempted "if the ADA requires an expansion of the RAP'S cutoff date"—a question on which the Attorney General took no position. (2-AER-127.) Thus, the notion that he is adequately defending CAA's interests simply cannot be squared with the facts. Again, the Plaintiffs' heavy reliance on the Attorney General's brief to support their position (*see* 2-AER-097-098) strongly attests to this fact.

Likewise, given that the City of Oakland has squarely advised that it "is in no position to defend against a modification to" Costa-Hawkins and urged the district court to invite the Attorney General into the case to do so, the premise that it will adequately represent CAA's interests likewise cannot be squared with the facts. And, indeed, the district court's holding that the City will represent CAA's interests now cannot be logically reconciled with its holding that the City did not previously represent CAA's interests sufficiently to excuse the delay in intervention.

As for permissive intervention, because the sole reason the district court gave for denying CAA's motion was the purported lack of timeliness, discussed above, and because that basis was an abuse of

24

discretion, so, too, was the district court's refusal to allow permissive intervention.

## ARGUMENT

### I. STANDARD OF REVIEW.

With respect to intervention of right, "[a] lower court's denial of a motion to intervene is reviewed *de novo*, except that its timeliness determination is reviewed for abuse of discretion." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016). "A court abuses its discretion if it fails to apply the correct legal rule or standard" or if its "application of that rule was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* at 853-54 (internal quotation marks and citation omitted).

This Court has "repeatedly instructed that 'the requirements for intervention are [to be] broadly interpreted in favor of intervention.'" *Id.* at 853 (alteration in original) (quoting *Alisal*, 370 F.3d at 919. *See also Citizens for Balanced Use*, 647 F.3d at 897 ("the requirements are broadly interpreted in favor of intervention").

An order denying permissive intervention is reviewed for abuse of discretion. *Cty. of Orange v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986).

25

## II. THE DISTRICT COURT ERRED IN DENYING APPELLANT INTERVENTION OF RIGHT.

This Court's precedents require "an applicant for intervention as of right to demonstrate that '(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.'" *Alisal,* 370 F.3d at 919 (quoting *United States v. City of Los Angeles,* 288 F.3d 391, 397 (9th Cir. 2002)). "Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano,* 324 F.3d 1078, 1083 (9th Cir. 2003).

Again, there is no dispute that the first and second prongs are met here. (*See* 1-AER-005-006 [district court noting that Plaintiffs conceded these points and affirmatively ruling that these criteria were met].)

As for the other two criteria, the district court was wrong to hold that they were not met.

**A.     The District Court Erred in Holding That CAA's Motion Was Not Timely.**

In determining whether a motion is "timely," a court generally evaluates three factors: (1) the stage of the proceedings, (2) prejudice to existing parties, and (3) the length of, and reason for, any delay in seeking to intervene. *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002). The second of those is the "most important." *Kalbers*, 22 F.4th at 823.

Courts assess these criteria, and the issue of timeliness, especially "leniently" when intervention is sought of right, because of the "likelihood" of "serious harm." *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) ("*Oregon I*") (overturning denial of Idaho's motion to intervene as untimely).

**1.     Stage of proceedings: Appellant properly sought to intervene at the commencement of a "new stage" in the litigation, having disclaimed any intention of reopening settled issues.**

The district court's treatment of this first prong of the timeliness analysis was cursory: It briefly cited the prior motions that had been resolved and the settlement negotiations that had taken place, and then

held that "[o]n its face, the stage-of-proceedings factor weighs heavily against a finding of timeliness." (1-AER-007.)

But that analysis does not explain why CAA should not be permitted to participate in an entirely new phase of the litigation, when the issue of Costa-Hawkins' preemption will be joined in earnest. While acknowledging the general principle that state laws *can* be preempted by the ADA, none of the prior motions resolved the question of whether Costa-Hawkins should actually *be* preempted in this specific case. (*See* 2-AER-218-219 ["while Plaintiffs are correct that the ADA *can* preempt state law, their [summary judgment] brief contains no analysis of why preemption is appropriate *in this case*. They acknowledged as much at the hearing on these motions and offered to submit additional briefing."].)

Indeed, in denying the City's motion to dismiss, the district court expressly declined to certify Costa-Hawkins' constitutionality to the California Attorney General because "the preemption question [wa]s not actually before the Court." (3-AER-364.) And "[t]he motions for class certification and judgment on the pleadings largely focused on other issues." (1-AER-009.) However, after granting the Plaintiffs summary judgment with respect to the *prima facie* elements of their ADA claim, the district court determined that the Attorney General should be invited

to participate, because the focus of the suit would shift to the constitutionality of Costa-Hawkins, *i.e.,* would enter a new phase of the litigation. (2-AER-217-220.)

This Court's precedents have held that "a party's interest in a specific phase of a proceeding may support intervention at that particular stage of the lawsuit," notwithstanding substantial prior litigation activity. *Alisal,* 370 F.3d at 921. Thus, for example, in *Smith* this Court held that a district court abused its discretion in denying intervention as untimely to a sub-class of disabled children who sought to intervene in 2013 to challenge a renegotiated settlement in a lawsuit that had been ongoing since 1993, where "the adoption of Renegotiated Outcome 7 in 2012 marked the commencement of a 'new stage' in the" litigation." 830 F.3d at 856. Noting that "Appellants [we]re not seeking to reopen decades of litigation," the Court held "it was error to measure the timeliness of Appellants' motions by reference to stages of litigation pre-dating the change in circumstances that motivated Appellants' motion to intervene." *Id. See also Oregon I,* 745 F.2d at 552 (overruling finding of untimeliness because "a change of circumstance, which suggests that the litigation is entering a new stage, indicates that the stage of the proceeding and

29

reason for delay are factors which militate in favor of granting the application [to intervene]").

As noted above, though Plaintiffs mentioned the issue of Costa-Hawkins in their complaint, it has not been an issue that has been central to the ongoing proceedings between them and the City—as the district court has acknowledged. Prior to the grant of partial summary judgment to Plaintiffs, in which the chief focus was on whether the *prima facie* elements of an ADA Title II disparate impact discrimination claim had been made out, it was entirely plausible that the case would be resolved without Costa-Hawkins' preemption ever becoming an issue. That prospect disappeared in the fall of 2025, which is when CAA promptly sought to intervene.

This is also not a situation in which the would-be intervenor seeks to "reopen [years] of litigation." *Smith*, 830 F.3d at 856). Indeed, CAA expressly disclaimed any intention of doing so and sought merely to participate in the litigation to address the constitutionality of Costa-Hawkins—a matter that has not previously been ruled on. Especially Given CAA's conceded interests in this discrete issue, the district court erred in concluding that this factor weighed against intervention.

### 2. The trial court correctly found that the prejudice to the existing parties would be "minimal."

This Court "ha[s] previously held that prejudice to existing parties is '*the most important* consideration in deciding whether a motion for intervention is untimely.'" *Smith, 830 F.3d at 857* (quoting *Oregon I, 745 F.2d at 552*) (emphasis added). That being the case, it is extremely significant that the district court concluded (rightly) that the prejudice to the existing parties of allowing CAA to intervene would be "minimal." (1-AER-008.) As the court noted:

> CAA seeks to intervene to take part in the upcoming summary judgment briefing resolving the remaining issues in the case. ECF No. 163 at 17–18. They state that they are "prepared to comply" with a briefing schedule set by this Court. *Id.* at 18. Neither CAA nor Plaintiffs suggests that CAA will seek to relitigate issues that have already been resolved or expand the scope of the proceedings. The prejudice to existing parties therefore largely takes the form of a slight delay in resolving the case on the merits, caused by the need to accommodate a brief from CAA. As the parties' proposed briefing schedule shows, that delay would be a mere two weeks.

(1-AER-007-08.)

Though the district court did not specify the amount of weight it gave this factor, necessarily "[t]his lack of prejudice weighs heavily in favor of timeliness." *Kalbers, 22 F.4th at 826*. (And, of course, even with

31

intervention having been denied CAA strove to avoid interfering with the underlying briefing schedule, filing its request to submit an amicus brief on the same day that the City filed its opposition, to ensure that Plaintiffs had sufficient time to respond in advance of the May 28 hearing.)

### 3. Especially given the lack of prejudice, denying CAA's motion based on the length of, and reason for, delay was also error.

In the absence of prejudice to the existing parties, and in light of the fact that the case is entering a "new stage" in the proceedings, this factor should not suffice, standing alone, to sustain the trial court's ruling—especially given the fact that CAA sought to intervene at the exact same time that another new party—the Attorney General—was permitted to intervene at the district court's invitation. "'[T]imeliness is not a tool of retribution to punish the tardy would-be intervener, but rather a guard against prejudicing the original parties by the failure to apply sooner.'" *Kalbers,* 22 F.4th at 823 (quoting *John Doe No. 1 v. Glickman,* 256 F.3d 371, 375 (5th Cir. 2001)). *See also Oregon I,* 745 F.2d at 552-53 (reversing district court's order denying intervention motion as untimely where proposed intervenor sought to intervene to participate in

32

a new phase of the litigation, agreed not to relitigate settled issues, and there was no prejudice to the existing parties).

Moreover, the district court's ruling with respect to this prong was error. The district court held that

> CAA was obligated to seek intervention as soon as it 'should have been aware that its interests would [not] be protected adequately by the parties.' *Kalbers*, 22 F.4th at 823. This was true, at the latest, in February 2021, when CAA's Executive Vice President of Legal Affairs learned about this litigation. ECF No. 173 at 6 (citing ECF No. 163-4 ¶¶ 2–3). Almost five more years passed before CAA moved to intervene.

(1-AER-012.)

This holding, however, is in direct tension with the court's alternative holding, that intervention should be denied because CAA's interests will be adequately represented by the Attorney General and the City of Oakland. (*See* 1-AER-011-013.) The district court held that "the City has consistently defended CAA's members' economic interests in arguing that the ADA has not been violated and the existing RAP should remain unmodified..." (1-AER-012.)

And, until mid-2025, that was true enough. As noted above, though the City had historically opposed Costa-Hawkins as a policy matter, nothing in its early briefing suggested that it would not defend the law; indeed, it expressly relied on Costa-Hawkins in support of its motion to

33

dismiss, arguing (for example), that "modifying the [RAP] to apply rent control to newer units, in violation of state law, is not a reasonable modification" under the ADA. (*See* 3-AER-392, lines 21-22.) The City's briefing on the motion for class certification and motion for judgment on the pleadings likewise contained no indication that it would not defend the law—indeed, it barely discussed Costa-Hawkins at all.[6]

The City's April 2025 motion for summary judgment and opposition to Plaintiffs' motion was the first time the City affirmatively stated, "the Oakland City Council has repeatedly demonstrated its opposition to section 1954.52(a)(2) [and, t]herefore, the City *is in no position to defend against a modification to section 1954.52(a)(2).*" (2-AER-268; emphasis added.) CAA learned of this fact upon reading the district court's ruling on those motions in August of that year, and it moved promptly thereafter to seek intervention. (2-AER-162, 172-173.)

Given these facts, CAA had no obligation to seek intervention sooner, and, in fact, had it sought to do so the district court likely might well have denied the motion as unnecessarily early. After all, this Court seeks to "'discourage premature intervention' that unnecessarily 'squander[s] scarce judicial resources and increase[s] litigation costs.' …

---

[6] *See* note 3, *supra.*

Accordingly, while [it] construe[s] the intervention motions that [it] receive[s] liberally … [the Court] do[es] not require hasty intervention." *Kalbers,* 22 F.4th at 823 (quoting *John Doe No. 1,* 256 F.3d at 376-77). It was only at the point that the City formally disclaimed an ability to fully defend Costa-Hawkins and the Attorney General was invited to intervene (only to forgo a defense of Costa-Hawkins as well) that intervention by CAA became appropriate.[7]

The district court also held that CAA's delay was unreasonable "because the City of Oakland is not the State of California, is in fact *regulated by* Costa-Hawkins, and therefore has no reason to seek to defend the constitutionality of that Act (as opposed to its own local rent control program). … [CAA] cite[s] no authority establishing a presumption that a *city* government will necessarily defend a *state* law." (1-AER-010, lines 20-28, italics in original.) But (1) the courts *have* presumed that local governments can be expected to defend state interests, absent evidence to the contrary,[8] and (2) far more importantly,

---

[7] For that matter, given the fact that the issue of Costa-Hawkins' preemption is just now being joined for the first time, it isn't clear what CAA would have been expected to do for the intervening five years if it had intervened in 2021.

[8] *See, e.g., Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs,* 493 F.3d 570, 578-79 (5th Cir. 2007) (State of Louisiana

as a matter of fact, until mid-2025 the City of Oakland actually *was* defending the State's (and CAA's) interests, as the district court expressly concluded. (*See* 1-AER-012.)

**B. The District Court Erred in Holding That CAA's Interests in Defending Costa-Hawkins Would be Adequately Represented by the Attorney General and the City of Oakland Going Forward.**

"In assessing whether a present party will adequately represent an intervenor-applicant's interests, [courts must] 'consider several factors, including whether [a present party] will undoubtedly make all of the intervenor's arguments, whether [a present party] is capable of and willing to make such arguments, and whether the intervenor offers a necessary element to the proceedings that would be neglected.' [Citation.]" *Prete v. Bradbury,* 438 F.3d 949, 956 (9th Cir. 2006) (quoting *Sagebrush Rebellion, Inc.,* 713 F.2d at 528 (emphasis added)). The Supreme Court has held that "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be'

---

properly denied intervention in a suit against a political subdivision of the state, for the "purpose of enforcing Louisiana's anti-seizure provisions found in La. Const. art. XII, § 10(C) and La. Rev. Stat. Ann. § 13:5109(B)(2)," because the local entity was presumed to adequately represent the State's interests).

inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (quoting 3B Moore's Federal Practice, ¶ 24.09-1[4] (1969)).

No party will adequately represent the interests of CAA and its members here, and the district court was wrong to hold otherwise. For one thing, it held CAA to an unduly high burden. For another, even applying that heightened burden the court was wrong to hold that CAA failed to meet it.

> **1.     The district court held CAA to an unduly high standard for showing inadequacy of representation.**

The district court's ruling was premised primarily on a conclusion that, notwithstanding the language of this Court's ruling in *Prete* and the Supreme Court's ruling in *Trbovich* to the effect that the burden of showing this requirement is met is "minimal," CAA was subjected to a much higher standard—a need to make a "compelling showing" to overcome the presumption that the government would adequately represent its interests. (1-AER-011-012, citing *Arakaki, 324 F.3d at 1086*.) However, that presumption does not apply here. It arises only when "the applicant's interest is *identical* to that of one of the present

37

parties," including the government, litigating on behalf of the public good. *Arakaki*, 324 F.3d at 1086 (emphasis added). That is not the case here.

In *Arakaki*, on which the district court chiefly relied, the proposed intervenors—native Hawaiians who were "lessees of Hawaiian homestead lands or applicants for such leases" interested in the state programs challenged—were denied intervention where (1) the State had affirmatively represented to the Court that "that it w[ould] make all arguments necessary to defend the benefits to native Hawaiians," 324 F.3d at 1087, but where, in addition, another association of "native Hawaiian homestead lessees, the [State Council of Hawaiian Homestead Association], ha[d] already successfully intervened as parties to the litigation" and promised to collaborate with the proposed intervenors. *Id.* In other words, this Court did not hold that the State's participation precluded *all* intervention by private interests. It merely held that "Not every native Hawaiian group could or should be entitled to intervene" when one such group had already been allowed to. *Id*. (emphasis added).

And in *Prete*, this Court held that the intervenor's interests were adequately represented by the State where the intervenor's interest was in merely defending the constitutionality of a ballot measure restricting initiative proponents from paying petition-circulators on a per-signature

38

basis and where the State had vigorously defended the law. However, in that case "the intervenors were seeking to uphold the government's regulations, *and nothing more.*" *Citizens Allied for Integrity & Accountability, Inc. v. Miller*, No. 1:21-cv-00367-DCN, 2022 WL 1442966, at *12 (D. Idaho May 5, 2022) (emphasis added).

Here, unlike in *Prete*, CAA is not solely asserting a bare interest in seeing the law it supported enforced. It also seeks to defend its members' economic interests—not shared by the existing defendants—in their right to set fair market rents for units exempt from local rent control under Costa-Hawkins. Thus, "[m]ore analogous to the instant case [than *Prete*] are situations in which intervenors *shared a related but separate interest, such as in cases where the intervenors had a distinct economic interest* or were arguing for a different interpretation of government regulations." *Id.* (granting intervention of right to group with distinct economic interest, though both it and the State had an interest in defending the State's laws) (emphasis added). Indeed, along those lines, this Court has noted that "'Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public.'" *Forest Conservation Council v. United States*

39

*Forest Serv.,* 66 F.3d 1489, 1499 (9th Cir. 1995) (quoting 3B Moore's Federal Practice, ¶ 24.07[4] at 24-78 (2d ed. 1995)).

A number of cases exemplify this distinction. Thus, for example, in *Mich. State v. Miller,* 103 F.3d 1240, 1245-46 (6th Cir. 1997), the Sixth Circuit (citing Ninth Circuit case law) held that a trade association's interest in defending a statute it had advocated for was not "identical" to the State's interest in defending it, where the statute made the State the regulator while the association's members were the targets of the regulations, as is true with respect to Costa-Hawkins. Likewise, in *Sequoia Forestkeeper v. La Price,* No. 1:16-CV-0759 AWI JLT, 2017 WL 56655, at *2-4 (E.D. Cal. Jan. 4, 2017), the district court held that though both the existing defendants (the U.S. Forest Service and its officials) and the proposed intervenor (a corporation that had been contracted by the Service to perform logging activities on federal lands) shared the same goal of defending the logging activities in question, the Service did not adequately represent the intervenor's interests. "Defendants' interest is more focused on 'broad public interests' and on complying with applicable laws; Defendants are not primarily focused on the economic interests of SFP." *Id.* at *4. *See also Sierra Club v. Espy,* 18 F.3d 1202, 1208 (5th Cir. 1994) ("The

government must represent the broad public interest, not just the economic concerns of the timber industry. Given the minimal burden on the movants to satisfy this requirement, we conclude that the government's representation of the intervenors' interest is inadequate."); *Forest Conservation Council, 66 F.3d at 1499* ("The Forest Service is required to represent a broader view than the more narrow, parochial interests of the State of Arizona and Apache County.").

In this case, the existing defendants and CAA's members may have "related" interests, but they do not have "identical interests" that would trigger the presumption of adequacy. "Thus, there is no presumption requiring a compelling showing that the existing Defendants will not adequately represent its interests. In other words, the normal standard … applies," *Citizens Allied for Integrity & Accountability, 2022 WL 1442966, at *15-16*. That standard is that "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich, 404 U.S. at 538 n.10*. *See also Sagebrush Rebellion, 713 F.2d at 528* ("the requirement of inadequacy of representation is satisfied if the applicant shows that representation of

its interests 'may be' inadequate and that the burden of making this showing is minimal."). This is a burden CAA readily meets.

> **2. Even under the higher standard the district court was wrong to hold that the Attorney General and City of Oakland adequately represent CAA's interests.**

But even if the district court were correct that the higher standard applied, its holding that CAA failed to meet that standard is simply unsustainable on the record below, *especially* after the Attorney General filed his lone brief in this case.

The district court invited the Attorney General to intervene to give it "the opportunity to defend the statute [Costa-Hawkins] against this challenge." (2-AER-220, quoting *Roe v. LexisNexis Risk Solutions Inc.*, No. 12-cv-6284-BRO-E, Order Regarding Motion for Judgment on the Pleadings, ECF No. 23 at 5 (C.D. Cal. Jan. 3, 2013).) Instead, the Attorney General submitted a "statement" in which he conceded that "If the ADA Requires an Expansion of the RAP's Cutoff Date"—a question upon which the Attorney General took no position—"Then the Costa-Hawkins Act Is Likely Preempted by the ADA." (2-AER-127.) The Attorney General also declined to take a position on whether Plaintiffs'

42

proposed changes to Costa-Hawkins would be a "fundamental alteration" of state law that the ADA does not require. (2-AER-129 n.9.)

And having made those concessions, the Attorney General then proceeded to propose an alteration to Costa-Hawkins—a 15-year rolling "new construction" exemption—that is eerily similar to the amendments to Costa-Hawkins that Mr. Bonta proposed as a legislator, which CAA successfully opposed in 2019. (*Compare* 2-AER-131-133 *with* Assem. Bill 36 (2019-2020 Reg. Sess.) [coauthored by then-Assemblymember Bonta].) Plaintiffs have latched onto this proposal as evidence of the reasonableness of "modifying" or "altering" (*i.e.*, nullifying) Costa-Hawkins' new construction exemptions, by bringing new units under Oakland's rent control limits. (*See* 2-AER-097-100.) Indeed, they have enthusiastically endorsed the Attorney General's proposal as even "better" than the modification that they had previously proposed. (2-AER-089, lines 8-20.)

CAA called the Attorney General's non-defense "defense" to the court's attention prior to its ruling on CAA's motion, yet the court still held that the Attorney General would adequately represent CAA's interests. (1-AER-013; 2-AER-112-114.) That holding simply cannot withstand scrutiny. It certainly cannot be said that the Attorney General

"will undoubtedly make all of the intervenor's arguments," nor can it plausibly be disputed that CAA "offers a necessary element to the proceedings that would be neglected'" in CAA's absence—an actual defense of the law. *Prete*, 438 F.3d at 956. The district court's response to this point was that CAA had not fully explained what its arguments would be (*see* 1-AER-013, lines 6-8), but CAA made clear that it would forcefully defend the legality of Costa-Hawkins as is, which the Attorney General had not done (*see* 2-AER-113-114). Surely, CAA was not required to fully brief the merits of the Costa-Hawkins issue as part of its motion to intervene, when the whole purpose of its motion was to seek permission to participate in the merits briefing on the schedule jointly proposed by the parties in the event intervention was allowed (*see* 2-AER-141).

As for the City of Oakland, having held that its representation of CAA's interests was *in*adequate for purposes of the "timeliness" analysis (despite the fact that the City had been defending CAA's interests before 2025), the district court then reversed course and held that its representation would be adequate going forward—despite having expressly disclaimed an intention to do so (2-AER-219, lines 5-9, quoting City's motion for summary judgment). And the court further held that

44

"the City has consistently defended CAA's members' economic interests in arguing that the ADA has not been violated and the existing RAP should remain unmodified, and CAA offers no reason to believe the City will not continue to do so." (1-AER-012, lines 22-25.)

With all due respect, these holdings simply cannot be squared with one another or with the record of this case. The only logically consistent reading of the record is that the City of Oakland was adequately defending CAA's interests prior to 2025, meaning that CAA had no obligation to intervene, and that it ceased to adequately defend CAA's interests in mid-2025. At that point and *because the court agreed that the City should not be required to defend a state law*, the district court itself determined that it was appropriate to seek an advocate to defend the interests of Costa-Hawkins, and thus certified the question to the Attorney General. This record clearly makes CAA's simultaneous attempt to intervene to also defend the interests of Costa-Hawkins appropriate at that time. It is not plausible to conclude the opposite—that the City's defense of CAA's interests was previously inadequate and somehow became more so after it expressly disclaimed an intention to defend Costa-Hawkins.

It is true that in opposing the Plaintiffs' supplemental motion the City does argue that Plaintiffs have not met their burden of proof in establishing that Costa-Hawkins should be preempted, but even then it offers the caveat that "Costa Hawkins is a state law, and not endorsed by the City, the City is not well suited to address the preemption question." (2-AER-059, lines 8-10.) And it, too, does not advance CAA's core arguments: that Costa-Hawkins' new construction requirements are themselves reasonable—indeed, are in line with the vast majority of rent-control policies nationwide; that they serve valuable public policy purposes in a state facing a crisis-level, multi-decade housing shortage; and that they are inseparable from the many other housing policy choices that the State has made. (2-AER-016-049.)

Moreover, though the City's brief notes that "the proposed modification would change the established expectations of participants, especially tenants and owners of buildings that suddenly become rent-controlled" (2-AER-069), it does not address the *extraordinary* costs of the proposed modification to property-owners who would be required to implement it—a fact that is relevant in the context of a "reasonable modification" analysis to determining whether preemption under the ADA is appropriate. By contrast, CAA's brief carefully examines

46

Plaintiff's own evidence to demonstrate that the proposed modification carries a projected price tag of $90 million annually. (*See, e.g.,* 2-AER-034.)

These arguments are foundational to the defense of Costa-Hawkins, because the effect that Plaintiffs' proposed modifications would have on the purposes of Costa-Hawkins is central to both of the main questions presented by Plaintiffs' motion: (1) whether the proposed modifications are "reasonable"[9] and (2) whether they would "fundamentally alter" the State's housing programs.[10]

---

[9] *See, e.g., Where Do We Go Berkeley v. Cal. DOT,* 32 F.4th 852, 862 (9th Cir. 2022) (when the issue is a proposed modification to a government policy designed to address a matter of fundamental public policy, "reasonableness depends on the nature of the [problem the policy seeks to address], whether the proposed modification would affect the agency's ability to address [it], and the probability of worsening [the problem] if the agency is forced to alter its programs"); *see also id.* (""[a] modification's reasonableness depends on how it impacts the goals of an agency's program").

[10] *See, e.g., PGA Tour, Inc. v. Martin,* 532 U.S. 661, 690 (2001) ("[a] modification that provides an exception to a peripheral tournament rule without *impairing its purpose* cannot be said to 'fundamentally alter' the tournament" (emphasis added)); *Easley by Easley v. Snider,* 36 F.3d 297 (3d Cir. 1994) (proposal to expand an existing state attendant-care program so that individuals with cognitive disabilities could participate with the assistance of surrogates was a fundamental alteration because it would undermine a core legislative objective of the program, which was to help individuals with physical disabilities maintain independence and potentially enter the workforce).

### III. THE DISTRICT COURT ALSO ERRED IN DENYING APPELLANT PERMISSIVE INTERVENTION.

"Generally, permissive intervention under Rule 24(b) requires '(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" *Blum v. Merrill Lynch Pierce Fenner & Smith Inc., 712 F.3d 1349, 1353 (9th Cir. 2013)*. Additionally, "[i]n exercising its discretion, the Court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. Proc. 24(b)(3).

In this case, the sole and exclusive reason the district court gave for denying intervention was the purported lack of timeliness of CAA's motion. For the reasons discussed above, the district court's holding that CAA's motion was untimely was an abuse of discretion. Accordingly, its ruling on this score was an abuse of discretion as well.

## CONCLUSION

The district court's ruling on timeliness was wrong because the City of Oakland was adequately protecting CAA' interests until mid-2025. Thus, CAA was not obliged to (and very possibly would not have been allowed to) intervene during that time. When that changed—when it

48

became clear that no party would defend CAA's interests in the enforceability of Costa-Hawkins moving forward—CAA moved promptly to intervene to defend those interests. Likewise, the district court's conclusion that the existing defendants will adequately represent CAA's interests going forward cannot be squared with the demonstrable fact that they are not and will not do so.

For these reasons, the district court's order denying CAA's motion to intervene should be reversed and this case should be remanded to allow CAA to participate in full in the proceedings relating to Plaintiffs' supplemental motion for summary judgment and any subsequent appeal.

Respectfully submitted,

Dated: April 28, 2026          NIELSEN MERKSAMER LLP

By: /s/ Christopher E. Skinnell

*Attorneys for Movant-Appellant*
CALIFORNIA APARTMENT ASSOCIATION

49

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 26-1648

I am the attorney or self-represented party.

**This brief contains** | 8,626 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | |.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Christopher E. Skinnell | **Date** | April 28, 2026
*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form17instructions.pdf](http://www.ca9.uscourts.gov/forms/form17instructions.pdf)

**9th Cir. Case Number(s)** | 26-1648

The undersigned attorney or self-represented party states the following:

◉ I am unaware of any related cases currently pending in this court.

○ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

○ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | /s/ Christopher E. Skinnell | **Date** | Apr 28, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at [forms@ca9.uscourts.gov](mailto:forms@ca9.uscourts.gov)*

**Form 17**                                                                 *New 12/01/2018*