Case No. 25-6068

# In the United States Court of Appeals For the Ninth Circuit

**CALIFORNIA APARTMENT ASSOCIATION, STEPHEN LIN, RAKESH and TRIPTI JAIN, ALISON MITCHELL, MICHAEL HAGERTY, and H. ALEX and DANNIE ALVAREZ**

*Plaintiffs - Appellants,*

*v.*

**COUNTY OF ALAMEDA, BOARD OF SUPERVISORS OF THE COUNTY OF ALAMEDA, and DOES 1-25,**

*Defendants – Appellees.*

---

## APPELLANT'S EXCERPTS OF RECORD
### (Volume 1 of 3)

---

On Appeal from the United States District Court
for the Northern District of California
The Honorable Laurel Beeler, Presiding
District Court Case No. 3:22-cv-02705-LB

NIELSEN MERKSAMER LLP
Christopher E. Skinnell (SBN 227093)
Hilary J. Gibson (SBN 287862)
2350 Kerner Boulevard, Suite 250
San Rafael, California 94901
Tel: (415) 389-6800
Fax: (415) 388-6874
*Attorneys for Plaintiffs - Appellants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IAN SMITH, et al.,

        Plaintiffs,

    v.

CITY OF OAKLAND,

        Defendant.

Case No. 19-cv-05398-JST

**ORDER ON MOTION TO INTERVENE**

Re: ECF No. 163

The California Apartment Association ("CAA") moves to intervene in this action "to defend the constitutionality of the Costa-Hawkins Rental Housing Act, Cal. Civ. Code §§ 1954.50–1954.535" ("Costa-Hawkins"). ECF No. 163 at 8. The motion to intervene is opposed by Plaintiffs, but not by Defendant City of Oakland or Intervenor California Attorney General. Because CAA has not met its burden to show that its motion is timely or that its interests are inadequately represented by the City and the California AG, the Court will deny the motion.

I.      **BACKGROUND**

      **A.**      **Costa-Hawkins**

In 1995, the California Legislature enacted Costa-Hawkins "to moderate what it considered the excesses of local rent control." *NCR Props., LLC v. City of Berkeley*, 89 Cal. App. 5th 39, 47 (2023). As relevant here, the Act provides that any rental unit is categorically exempt from local rent control rules if it (1) received a certificate of occupancy after February 1, 1995, or (2) was already exempt from the residential rent control ordinance of a public entity on or before February 1, 1995, pursuant to a local exemption for newly constructed units. *Id.*; Cal. Civ. Code § 1954.52(a)(1)–(2). The first provision encourages new construction to address California's housing shortage, and the second provision "grandfathers in" units within preexisting rent control

**AER002**

jurisdictions that were built in reliance on parallel exemptions in local laws. *Burien, LLC v. Wiley*, 230 Cal. App. 4th 1039, 1047 (2014); *NCR Properties*, 89 Cal. App. 5th at 51–52.

### B.    CAA and Its Members

CAA is a nonprofit statewide rental housing trade association, representing more than 50,000 rental property owners and operators who are responsible for nearly two million rental housing units throughout California. ECF No. 163 at 10. CAA was a principal sponsor of Costa-Hawkins in 1995 and has worked to defend the law since, including by lobbying the state legislature, litigating in the courts and filing amicus briefs, and raising money to oppose ballot measures that would have repealed it. *Id*. Many of CAA's members are located in Oakland and own properties that are exempt from Oakland's Rent Adjustment Program ("RAP") pursuant to Section 1954.52(a). *Id*. at 10–11. As such, those members' financial interests in their properties would be impacted by a ruling that Costa-Hawkins is unlawful as applied in Oakland. *Id*.

### C.    Procedural History

Plaintiffs, disabled renters in Oakland, California, filed the complaint on August 28, 2019, alleging that Oakland's RAP violated the Americans with Disabilities Act ("ADA") and the California Disabled Persons Act ("CDPA"). ECF No. 1. The RAP allows landlords to set initial rents at market rate but limits annual rent increases. *Id*. ¶ 4. All units constructed after January 1, 1983 are exempted from the RAP, meaning they also fall within the scope of the Costa-Hawkins grandfather provision at Cal. Civ. Code § 1954.52(a)(2). *Id*. ¶ 40. Moreover, before 1985, there were no state or federal laws or regulations requiring privately funded multifamily housing in Oakland to be accessible to people with disabilities. *Id*. ¶ 41; ECF No. 152 at 2.

Highlighting the intersection of the RAP and disability accessibility law, Plaintiffs argue that very few of the housing units covered by RAP are accessible to mobility-disabled individuals, and seek a court order modifying the RAP to add "units that were required to be accessible under state or federal law, but that were built after the current January 1, 1983 cutoff date for Program coverage." ECF No. 111-1 at 2.

Plaintiffs moved for summary judgment on April 26, 2024. ECF No. 111. Defendants moved for summary judgment on April 22, 2025. ECF No. 141. The Court's ruling, dated August

United States District Court
Northern District of California

2

AER003

25, 2025, granted partial summary judgment to the Plaintiffs and denied it to Defendants as to the prima facie elements of Plaintiffs' ADA Title II disparate impact claim. ECF No. 152 at 8, 12. Those elements require the plaintiffs to show that they (1) are individuals with disabilities; (2) are "otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) are "either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [their] disability." *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).

Where the prima facie elements are shown, the public entity must make a reasonable modification unless it "can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021). In considering whether Plaintiffs' requested modification was reasonable, the Court observed that Plaintiffs' requested modification would place the City in violation of the Costa-Hawkins grandfather provision, which requires units built after January 1, 1983 to remain exempt from the RAP. ECF No. 152 at 9. While Plaintiffs argued that the ADA's reasonable modification requirement preempts inconsistent state laws, the Court concluded that the record was inadequate to allow the Court to decide that issue. *Id*. at 9–10. At that point, the Court also decided to certify to the California Attorney General the question of whether Costa-Hawkins was preempted by the ADA, because "[o]rdinarily where modification of a state law is sought, the state entity charged with implementing or enforcing the law is the defendant." *Id*. at 10–11. The notice of certification invited the California AG to intervene on the "question of whether, in this instance, under the Supremacy Clause of the Constitution (Article VI, Clause 2), the ADA can preempt the requirements of Civil Code section 1954.52(a)(2)." ECF No. 157 at 2.

The California AG filed a notice of intent to intervene on November 11, 2025. ECF No. 162. On November 17, 2025, CAA moved to intervene. ECF No. 163. Plaintiffs opposed on December 23, 2025. ECF No. 173. CAA replied on January 15, 2026. ECF No. 174. The California AG filed a statement of non-opposition to CAA's intervention motion on January 22, 2026. ECF No. 176.

United States District Court
Northern District of California

3

AER004

## II.     JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III.    LEGAL STANDARD

Intervention is governed by Federal Rule of Civil Procedure 24, which provides for intervention as of right and permissive intervention.  Fed. R. Civ. P. 24(a), (b).  Rule 24 traditionally receives liberal construction in favor of applicants for intervention."  *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

## IV.    DISCUSSION

### A.     Intervention as of Right

Under Rule 24(a), "an applicant for intervention as of right [must] demonstrate that '(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.'"  *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)); *see also Arakaki*, 324 F.3d at 1083.  The non-party seeking intervention "bears the burden of showing that each of the four elements is met."  *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).  "Failure to satisfy any one of the requirements is fatal to the application."  *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).  However, "the requirements are broadly interpreted in favor of intervention."  *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

Conceding that two of the four factors for intervention as of right are met, ECF No. 173 at 5–6, the plaintiffs challenge only CAA's timeliness and its ability to show that its interests would not be adequately represented by existing parties.

### 1.     Significant Protectable Interests Relating to the Subject of the Action

CAA has shown, and Plaintiffs concede, that it has significant protectable interests relating to the subject of the action.  Its members own rental properties that currently receive the benefit of the "new construction" exemptions challenged in this litigation, and which would be subject to

4

**AER005**

United States District Court
Northern District of California

local rent control limits if those exemptions were invalidated. ECF No. 163 at 13; *see WildEarth Guardians v. Forson*, No. 2:17-CV-01004-SU, 2017 WL 5710440, at \*2 (D. Or. Nov. 27, 2017) (finding that organization whose members sought access to forest trails that would be closed by the challenged action had shown the requisite protectable interest); *cf. Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988) (finding that organization whose members would receive reduced rent under challenged rent control ordinance had satisfied the injury requirement for Article III standing). And, at the organizational level, CAA campaigned to enact Costa-Hawkins in 1995, has defended it in the courts, and has lobbied and fundraised against subsequent bills and ballot measures that would weaken it. ECF No. 163 at 13; *see Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding that the public interest group that sponsored a measure had shown the requisite protectable interest). CAA has established protectable interests relating to the subject of the action.

### 2.    Impairment or Impediment to CAA's Ability to Protect Its Interest

Likewise, that this action may impair or impede CAA's ability to protect its interest in avoiding the application of rent control laws to its members' properties is uncontested. "Ordinarily, once an applicant has established a significant protectable interest in the action, courts readily find that disposition of the case may, as a practical matter, impair or impede the applicant's ability to protect that interest." *Tech. & Intell. Prop. Strategies Grp. PC v. Insperity, Inc.*, No. 12-CV-03163-LHK, 2012 WL 6001098, at \*7 (N.D. Cal. Nov. 29, 2012) (quoting *Citizens for Balanced Use*, 647 F.3d at 898). For the reasons just explained, a court order subjecting accessible units built after 1983 to the RAP would harm CAA members' financial interests by limiting the rent they can charge on those units. Moreover, "an adverse court decision on . . . a measure [supported by a public interest group proposing to intervene] may, as a practical matter, impair the interest held by the public interest group." *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)). CAA has established that an adverse ruling would impair its ability to protect its interests.

### 3.    Timeliness

In determining whether a motion is "timely," a court generally evaluates three factors: (1)

5

AER006

the stage of the proceedings, (2) prejudice to existing parties, and (3) the reason for and length of the delay in seeking to intervene. *California Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002). "Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation." *Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816, 823 (9th Cir. 2021) (quoting *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996)).

### a.    Stage of the Proceedings

The complaint in this action was filed in 2019. ECF No. 1. Since then, the parties engaged in a settlement conference, ECF No. 45, the Court certified the class, ECF No. 66, the Court denied the City's motion for judgment on the pleadings, ECF No. 83, fact and expert discovery took place and closed, ECF No. 108, and cross-motions for summary judgment were resolved in part, ECF No. 152. On its face, the stage-of-the-proceedings factor weighs heavily against a finding of timeliness. *See League of Latin American Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997) (finding that intervention was not timely because "a lot of water had already passed underneath [the] litigation bridge," including issuance of a TRO and PI, appeal of the PI, certification of the class, denial of a motion to dismiss, a decision on summary judgment, and discovery); *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) (citing *League of Latin America Citizens* and holding that "substantial engagement by the district court with the issues in a case," through class certification and summary judgment, "weighs heavily against allowing intervention as of right").

### b.    Prejudice to Existing Parties

CAA seeks to intervene to take part in the upcoming summary judgment briefing resolving the remaining issues in the case. ECF No. 163 at 17–18. They state that they are "prepared to comply" with a briefing schedule set by this Court. *Id*. at 18. Neither CAA nor Plaintiffs suggests that CAA will seek to relitigate issues that have already been resolved or expand the scope of the proceedings. The prejudice to existing parties therefore largely takes the form of a slight delay in resolving the case on the merits, caused by the need to accommodate a brief from CAA. As the

United States District Court
Northern District of California

AER007

parties' proposed briefing schedule shows, that delay would be a mere two weeks. ECF No. 171.

Plaintiffs assert that intervention at such a late stage is "inherently prejudicial," ECF No. 173 at 8, but cite no case that stands for this proposition. They cite *Smith v. Marsh*, which emphasized the prejudiced caused by delay alone, 194 F.3d at 1051, but the delay here would be only two weeks. *See* ECF No. 171. *Smith v. Marsh* also evinced a concern that the intervenors would expand the scope of the litigation, 194 F.3d at 1051, but the briefing does not suggest that CAA intends to raise new issues or legal theories. Plaintiffs also cite *American Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Academy*, in which the Eighth Circuit worried that the proposed intervenors would introduce new legal theories that could "change the parties' respective strategies or framing of the issues during preliminary motion practice as readily as separate factual circumstances could," but again, this is not a concern that Plaintiffs raise here. 643 F.3d 1088, 1094 (8th Cir. 2011).

The Court concludes that any prejudice is minimal, resulting from a brief two-week delay in resolution of the merits.

### c.     Length of and Reason for the Delay

In its motion to intervene, CAA explains that it was not aware that the enforceability of Costa-Hawkins was at issue in this case until the Court issued its August 25 summary judgment order. ECF No. 163 at 8; *see also id*. at 16–17 ("[U]ntil the Court's ruling in late August of this year . . . the constitutionality of Costa-Hawkins had not been squarely raised."). "Upon discovering this fact," CAA asserts that it "moved expeditiously to seek intervention." ECF No. 163 at 8.

The Court cannot credit CAA's explanation for its six-year delay in moving to intervene. From the moment the complaint was filed in 2019, it has been clear that the relief Plaintiffs seek conflicts with the Costa-Hawkins provisions exempting new construction from local rent control programs and grandfathering in housing stock that was already exempt when Costa-Hawkins was passed. *See* ECF No. 1 ¶ 16 ("Under the ADA, Oakland must reasonably modify its Rent Adjustment Program to avoid this discriminatory impact. And, because the ADA preempts conflicting state and local laws, this obligation applies even if the necessary changes would

United States District Court
Northern District of California

7

AER008

otherwise be barred by the Costa-Hawkins Rental Housing Act or the City's own ordinances."); *id*. ¶ 40 (explaining that the RAP's 1983 cutoff date is reinforced at the state level by Costa-Hawkins); *id*. ¶ 91 ("[B]ecause the [ADA] preempts inconsistent state and local laws, this obligation applies even if it would require the City to adopt a new Program exemption date that is inconsistent with . . . California Civil Code section 1954.52(a)(2), or any other provision of the Costa-Hawkins Rental Housing Act."). In any conceivable sense, the question of whether the ADA preempts Costa-Hawkins under the Supremacy Clause was "squarely raised" at the very beginning of this case.

Indeed, the motion to dismiss, filed in October 2019, stated that "Plaintiffs recognize that [Costa-Hawkins] bars applying the [RAP] to newer rental units, but claim that the ADA preempts [Costa-Hawkins]." ECF No. 20 at 9. Plaintiffs' opposition argued that "[t]o the extent . . . the provisions of [Costa-Hawkins] conflict with" Plaintiffs' proposed extension of the 1983 cutoff date, "they must be preempted by the ADA." ECF No. 23 at 25–26. The Court's order denying the motion to dismiss in April 2020 acknowledged the ADA preemption issue and stated that "it is well established that the ADA's reasonable modification requirement may preempt state law," concluding that "the possibility that a modification might preempt state law does not automatically render it unreasonable." ECF No. 38 at 17. The Court declined to decide the issue, however, holding that it was "not actually before the Court" because neither party had briefed the merits of it and because the Court had already concluded that an ADA modification was not unreasonable simply because it conflicted with state law. *Id*. at 17 n.9. Separately, in December 2019, Plaintiffs provided to the California Attorney General and filed on the docket a Notice of Constitutional Question raising the ADA preemption issue explicitly. ECF No. 29 at 2.

The motions for class certification and judgment on the pleadings largely focused on other issues, *see* ECF Nos. 53, 54, 71, 77, and the parties did not ask the Court to decide the merits of the preemption issue until summary judgment. But that ADA preemption of Costa-Hawkins was a necessary issue in the case, and one that would likely require resolution, has been clear since its inception.

Even if the Plaintiffs had not raised ADA preemption of Costa-Hawkins in the complaint,

United States District Court
Northern District of California

8

**AER009**

the motion to dismiss briefing, and via a notice of constitutional question to the California AG, CAA's motion may still be untimely. CAA is a sophisticated entity which is unusually familiar with Costa-Hawkins. The fact that Plaintiffs sought to extend the 1983 RAP exemption cutoff date for certain units might alone have been enough to notify CAA of a conflict with Costa-Hawkins. Moreover, CAA also asserts an economic interest on behalf of its Oakland-based members: that interest has been threatened by the lawsuit since the beginning and would still be threatened even if Costa-Hawkins did not exist or had no role to play in this suit.

CAA was obligated to seek intervention as soon as it "should have been aware that its interests would [not] be protected adequately by the parties." *Kalbers*, 22 F.4th at 823. This was true, at the latest, in February 2021, when CAA's Executive Vice President of Legal Affairs learned about this litigation. ECF No. 173 at 6 (citing ECF No. 163-4 ¶¶ 2–3). Almost five more years passed before CAA moved to intervene.

In its reply, CAA shifts ground and argues that it was not aware "that its interests would no longer be protected adequately by the parties" until it learned about this Court's August 25 summary judgment order. ECF No. 174 at 6. There are two problems with this theory. First, the opening brief never suggested that time should run from the moment when CAA discovered that Oakland didn't intend to defend Costa-Hawkins. "[I]t is well established that courts do not consider argument raised for the first time in reply." *In re Bowman*, 630 F. Supp. 3d 1216, 1224 n.10 (N.D. Cal. 2022).

Second, CAA should have been aware that its interests would not be protected adequately by the parties from the beginning of the lawsuit, because the City of Oakland is not the State of California, is in fact *regulated by* Costa-Hawkins, and therefore has no reason to seek to defend the constitutionality of that Act (as opposed to its own local rent control program). Whether CAA was aware that "the City of Oakland had expressly disclaimed any intent or desire to defend Costa-Hawkins' constitutionality in this litigation," ECF No. 174 at 6, therefore does not appear relevant. CAA argues—again, for the first time in reply—that "CAA was entitled to rely on the presumption that the government would defend the law," but they cite no authority establishing a presumption that a *city* government will necessarily defend a *state* law. *See id.* at 9 (citing *United*

9

*States v. Carpenter*, 298 F.3d 1122, 1124 (9th Cir. 2002), which concerned the presumption that the government will represent its constituents' interests—not a presumption that the government will defend the laws of a different government entity, and *Yninguez v. Arizona*, 939 F.2d 727 (9th Cir. 1991), which concerned the state AG's defense of a state ballot measure).

Although the prejudice to the existing parties would be minimal, the severe length of delay and absence of any adequate explanation for that delay "weigh heavily" against intervention. *League of Latin American Citizens v. Wilson*, 131 F.3d at 1302. The Court concludes that CAA has failed to establish that its motion was timely.

### 4. Adequacy of the Current Parties

"In assessing whether a present party will adequately represent an intervenor-applicant's interests, we 'consider several factors, including whether [a present party] will undoubtedly make all of the intervenor's arguments, whether [a present party] is capable of and willing to make such arguments, and whether the intervenor offers a necessary element to the proceedings that would be neglected.'" *Prete*, 438 F.3d at 956 (quoting *Sagebrush Rebellion*, 713 F.2d at 528). "The 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties.'" *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086). "Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention." *Arakaki*, 324 F.3d at 1086 (citing *City of Los Angeles*, 288 F.3d at 402).

"The burden of showing inadequacy of representation is minimal and 'is satisfied if the applicant shows that representation of its interests "may be" inadequate . . . .'" *Prete*, 438 F.3d at 956 (quoting *Sagebrush Rebellion*, 713 F.2d at 528). At the same time, it is "not without teeth." *Id*. "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises" and "a compelling showing should be required to demonstrate inadequate representation." *Id*. (quoting *Arakaki*, 324 F.3d at 1086). "There is also an assumption of adequacy when the government is acting on behalf of a constituency that it represents. In the absence of a 'very compelling showing to the contrary', it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Arakaki*,

United States District Court
Northern District of California

10

**AER011**

324 F.3d at 1086 (citations omitted).

CAA has not made a "compelling showing" that its interests are not adequately represented. It argues that it has "historical experience with the law that the Attorney General will not and is therefore well-positioned to provide the Court with information that the Attorney General may not be." ECF No. 163 at 19. But CAA does not explain what this experience consists of or why it could influence this litigation. For that reason, the Court also cannot conclude that CAA will offer "a necessary element to the proceedings that would be neglected" otherwise. *Prete*, 438 F.3d at 956. In reply, CAA argues that its expertise could inform the "reasonableness" of the requested accommodation, ECF No. 174 at 18, but—again—does not explain what knowledge it brings to bear that other parties cannot access and why that knowledge relates to the reasonableness of an accommodation

CAA's reply disclaims any obligation to make a "compelling showing," erroneously arguing it need only make a "minimal" showing. ECF No. 174 at 7, 16–17. It argues that this is so because its interests differ from that of the state in that it seeks not only to "see[] the law it supported enforced," but also "to defend its members' economic interests—not shared by the existing defendants—in their right to set fair market rents for units exempt from local rent control under Costa-Hawkins." ECF No. 174 at 14. There are two fundamental problems with this argument. First, in seeking to establish timeliness, CAA repeatedly argues that it had no reason to intervene until the constitutionality of Costa-Hawkins was raised. But no intervening change has put CAA on notice that its economic interests would be poorly represented by the existing parties. In other words, in attempting to distinguish its interests from those of the California AG, CAA undercuts its only argument that its intervention was timely. Second, the City has consistently defended CAA's members' economic interests in arguing that the ADA has not been violated and the existing RAP should remain unmodified, and CAA offers no reason to believe the City will not continue to do so. As a government entity protecting that common interest, the City is subject to the same presumption of adequate representation that applies to the Attorney General, and CAA has made no attempt at a "compelling showing" that its interests would nonetheless not be represented by the City.

United States District Court
Northern District of California

AER012

United States District Court
Northern District of California

The AG filed its brief on February 20, 2026, conceding that state law must yield to contrary federal law under the Supremacy Clause but not engaging with the merits of the alleged ADA violation.  ECF No. 178.  CAA subsequently filed a "notice" arguing that the AG's statement "does not make all of [CAA]'s arguments" and "does not advance the key argument that CAA plans to make . . . : that the [ADA] does not preempt the 'new construction' exemptions of [Costa-Hawkins]."  ECF No. 179 at 2.[1]  But CAA does not explain any viable argument it might make that the Supremacy Clause does not apply under these circumstances and therefore that ADA preemption will not apply.  Moreover, the City will continue to argue that the ADA has not been violated, which is the best defense of Costa-Hawkins in light of federal preemption principles.

Moreover, because CAA failed to move to intervene in a timely manner, the Court nonetheless must deny CAA's motion to intervene as of right.

### B.        Permissive Intervention

Permissive intervention is governed by Rule 24(b)(1)(B).  Before the Court can exercise its discretion to grant permissive intervention under Rule 24(b), the applicant must show "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common."  *Perry*, 587 F.3d at 955 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996)).  "In the context of permissive intervention," courts "analyze the timeliness element more strictly than [they] do with intervention as of right."  *League of United Latin Am. Citizens*, 131 F.3d at 1308.

"Rule 24(b)(3) also requires that the court 'consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'"  *Id*. (quoting Fed. R. Civ. P. 24(b)(3)).  "Where a putative intervenor has met these requirements, the court may also consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors'

---

[1] Plaintiffs filed a motion to strike or disregard CAA's "notice," correctly observing that CAA failed to request leave of court to file it.  ECF No. 180.  The Court nonetheless considers it and finds no prejudice to Plaintiffs because it does not affect the outcome of CAA's motion.  The motion to strike or disregard is therefore denied as moot.

AER013

interest' and 'whether the intervenors' interests are adequately represented by other parties.'" *Id.* (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

Here, timeliness is not satisfied for the reasons the Court has already explained. *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 365 (1973) ("Whether intervention be claimed of right or as permissive, . . . the application must be 'timely.' If it is untimely, intervention must be denied. Thus, the court where the action is pending must first be satisfied as to timeliness."). The motion for permissive intervention is denied.

## CONCLUSION

It may be true that CAA has something to contribute to this litigation, but on the briefs before the Court, the Court cannot find that the factors for intervention as of right or permissive intervention have been met. For the reasons set forth above, the motion is denied.

**IT IS SO ORDERED.**

Dated: March 13, 2026



_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

AER014