**No. 26-1648**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

IAN SMITH, ET AL.
*Plaintiff-Appellees,*

v.

CITY OF OAKLAND, AND ROB BONTA, CALIFORNIA ATTORNEY GENERAL,
*Defendants,*

v.

CALIFORNIA APARTMENT ASSOCIATION,
*Movant-Appellant.*

---

Appeal from United States District Court,
Northern District of California
Hon. Jon S. Tigar
U.S. District Court Case No. 4:19-cv-05398-JST

---

## PLAINTIFF-APPELLEES' ANSWERING BRIEF

---

PUBLIC INTEREST LAW PROJECT
Michael Rawson (CA Bar No. 95868)
Craig Castellanet (CA Bar No. 176054)
449 15th St., Suite 301
Oakland, CA 94612-06001
Tel. (510) 891-9794
mrawson@pilpca.org

DISABILITY RIGHTS ADVOCATES
Thomas Philip Zito (CA Bar No. 304629)
Sean Betouliere (CA Bar No. 308645)
455 Market St., Ste 1940, PMB 509115
San Francisco, CA, 94105-2448

Emily Roznowski (IL Bar No. 6333265)
Rwehyang Raika Kim (IL Bar No. 6353153)
980 N Michigan Ave., Ste 1090 PMB 509115
Chicago, IL, 60611-4521
Tel. (332) 217-2328
eroznowski@dralegal.org

*Attorneys for Plaintiff-Appellees*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................iv

INTRODUCTION .........................................................................1

ISSUES PRESENTED.....................................................................4

STATEMENT OF THE CASE.............................................................5

    I.     THE UNDERLYING DISABILITY DISCRIMINATION CLAIMS ...........................................................................5

    II.    THE COSTA-HAWKINS ACT.............................................6

    III.   THE EARLY IDENTIFICATION OF THE ISSUE OF PREEMPTION OF COSTA-HAWKINS BY THE PARTIES AND THE COURT .....................................................7

    IV.   PROCEDURAL HISTORY AFTER CAA LEARNED OF THIS CASE IN 2021.......................................................8

    V.    CAA'S MOTION TO INTERVENE ...................................10

    VI.   PROCEDURAL HISTORY AFTER THE DISTRICT COURT DENIED CAA'S MOTION TO INTERVENE .................................11

SUMMARY OF THE ARGUMENT ....................................................12

ARGUMENT ..............................................................................16

    I.     STANDARD OF REVIEW ...............................................16

    II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT CONCLUDED THAT CAA'S INTERVENTION ATTEMPT WAS UNTIMELY. ..........................17

          A.    CAA sought to intervene while summary judgment was pending—an extremely late stage in the litigation. ..................18

ii

B. The District Court appropriately concluded that CAA's four-year delay and lack of adequate explanation weigh strongly against intervention....................................................20

C. The Parties will be prejudiced by CAA's delay. ........................23

III. IN THE ALTERNATIVE, THE DISTRICT COURT ALSO CORRECTLY DENIED INTERVENTION AS OF RIGHT BECAUSE EXISTING PARTIES WILL ADEQUATELY REPRESENT CAA'S INTERESTS IN THIS LITIGATION. ............24

A. The District Court applied the correct legal standard. ..............26

B. CAA failed to make a compelling showing that the City would not adequately represent its interests. ...........................28

C. CAA also has not shown the Attorney General is not adequately representing its interests, and its arguments concerning Attorney General Bonta's prior legislative advocacy have been waived.......................................................33

D. The District Court also correctly found that CAA would not "offer any necessary elements to the proceeding.".............36

IV. THE DISTRICT COURT ALSO APPROPRIATELY EXERCISED ITS DISCRETION TO DENY PERMISSIVE INTERVENTION..........................................................................40

CONCLUSION ...............................................................................................41

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015) ................................................................. 16

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003) .......................................................... Passim

*Brown v. Google LLC*,
172 F.4th 1128 (9th Cir. 2026) ........................................... 12, 16, 17, 19

*Cal. Chamber of Com. v. Council for Edu. & Rsch. on Toxics*,
29 F.4th 468 (9th Cir. 2022) ................................................................. 26

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) .................................................... 28, 31, 36

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ................................................................. 27

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) .............................................................................. 39

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ................................................................. 16

*L.A. SMSA Ltd. P'ship v. City of Los Angeles*,
817 F. App'x 350 (9th Cir. 2020) .......................................................... 30

*League of United Latin Am. Citizens v. Wilson*,
131 F.3d 1297 (9th Cir. 1997) ........................................... 19, 30, 40, 41

*McGary v. City of Portland*,
386 F.3d 1259 (9th Cir. 2004) ............................................................... 39

*Mi Familia Vota v. Fontes*,
129 F.4th 691 (9th Cir. 2025) ............................................................... 40

iv

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
   960 F.3d 603 (9th Cir. 2020) ....................................................... 28, 29, 32

*Or. Nat. Res. Council v. Marsh*,
   52 F.3d 1485 (9th Cir. 1995) ................................................................ 16

*Perry v. Proposition 8 Off. Proponents*,
   587 F.3d 947 (9th Cir. 2009) ....................................................... 27, 30, 40

*Prete v. Bradbury*,
   438 F.3d 949 (9th Cir. 2006) ................................................................ 38

*Smith v. Los Angeles Unified School District*,
   830 F.3d 843 (9th Cir. 2016) ............................................................ 19, 20

*Smith v. Marsh*,
   194 F.3d 1045 (9th Cir. 1999) .......................................................Passim

*United States v. Oregon*,
   745 F.2d 550 (9th Cir. 1984) ................................................................ 20

*United States v. Oregon*,
   913 F.2d 576 (9th Cir. 1990) ................................................................ 20

*Where Do We Go Berkeley v. Cal. Dep't of Transp.*,
   32 F.4th 852 (9th Cir. 2022) ................................................................ 39

**Statutes**

42 U.S.C. § 3604(f)(7) ................................................................................ 6

42 U.S.C. §§ 12101–213 (1990) ................................................................. 1

Cal. Civ. Code §§ 1954.50–535 (1995) ...................................................... 1

Cal. Civ. Code § 1954.52 ................................................................. 6, 7, 10

Cal. Civ. Code § 1954.53 ............................................................................ 7

Cal. Gov't Code § 12955.1.1 ...................................................................... 7

**Rules**

Fed. R. Civ. P. 24(a)(2) ..................................................................... 10

Fed. R. Civ. P. 24(b)(3) ..................................................................... 41

**Regulations**

24 C.F.R. § 100.201 ............................................................................ 7

24 C.F.R. § 100.205(a) .................................................................... 5, 6

28 C.F.R. § 35.130(b)(7)(i) ..................................................... 32, 38, 39

Cal. Code Regs., tit. 24 ....................................................................... 6

**INTRODUCTION**

Nearly seven years ago, Plaintiffs filed suit against the City of Oakland seeking to remedy the fact that its Rent Adjustment Program ("rent control" or the "Program") does not provide people with mobility disabilities with meaningful access to its protections from excessive annual rent increases in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–213 (1990) ("ADA"). The California Apartment Association ("CAA") first learned about the litigation in 2021. 1-AER-010. Despite the repeated implication of CAA's interest in the possible preemption of the California Costa-Hawkins Rental Housing Act, Cal. Civ. Code §§ 1954.50–535 (1995) ("Costa-Hawkins"), CAA sat on the sidelines for nearly four years before it finally moved to intervene.

CAA now claims its delay was justified because it only recently learned that the City of Oakland supposedly was "not a proponent" of Costa-Hawkins's limitations on local rent control and was "in no position to defend" against modification of that law. Opening Br. at 34. To the contrary, the City's opposition to such limitations was highlighted and extensively discussed in Plaintiffs' Motion for Summary Judgment filed in April of 2024, 1-SER-203–04, and it was a matter of public record (as reflected by multiple unanimous City Council resolutions) as early as 2016. 1-SER-204. Despite this, the City has in fact vigorously argued against Plaintiffs' requested relief and that Costa-Hawkins's limitations on rent

1

control should not be preempted in the context of this case. *See, e.g.*, 2-AER-058–80. CAA also did not properly make this argument below, and it was correctly disregarded by the District Court. 1-AER-010 (rejecting argument raised for the first time on reply).

Before the District Court, CAA excused its extreme delay by arguing that the question of Costa-Hawkins's constitutionality had not been "squarely raised" prior to the District Court's Order granting partial summary judgment to Plaintiffs. 2-AER-200–01. The District Court correctly rejected this contention, citing to an array of filings and orders questioning Costa-Hawkins, including Plaintiffs' 2019 complaint. 1-AER-008. Faced with this factual record, the District Court rightly concluded that CAA's motion was untimely.

The District Court also properly denied CAA's intervention on the alternative ground that CAA's interests were adequately represented by the existing Parties because CAA and the City shared the same "ultimate objective." 1-AER-011. Although the City has repeatedly expressed its desire to be free from the limitations set by sections 1954.52(a)(1) and (2) of Costa-Hawkins, this has not stopped the City from arguing that Plaintiffs' proposed remedy is unreasonable, unnecessary, and a fundamental alteration of the rent control Program and Costa-Hawkins. *See, e.g.*, 2-AER-058–66, 066–80, 227–36, 261–71. The City has also that the ADA does not preempt Costa-Hawkins in the context of this case. *See, e.g.*,

2

2-AER-058–66. These are fundamentally the same arguments CAA seeks to make, Opening Br. at 44, and each of them would accomplish the same "ultimate objective"—a finding that Oakland's rent control Program should not be expanded to include later-built units that were required to be accessible, and that sections 1954.52(a)(1) and (2) of Costa-Hawkins should not be preempted by the ADA in the context of this case. *See* 2-AER-197–99 (describing CAA members' interests in preserving Costa-Hawkins's new construction exemption). The District Court thus correctly found that CAA failed to make the required "compelling" or "very compelling" showing that its interests would not be adequately represented, and appropriately denied intervention on that alterative ground. 1-AER-011–13; *see also* 2-AER-203–04, 1-SER-087–88.

In addition to being rightly denied, CAA's Motion to Intervene is now superfluous, because it has already participated in the District Court litigation to the full extent it originally proposed. At the District Court, CAA stated that it sought only to provide "briefing and argument" on summary judgment, which would be supported only by existing discovery, declarations submitted in support of its intervention motion, and the legislative history of Costa-Hawkins. 1-SER-113. CAA has already had a full opportunity to do exactly that: in its Opening Brief, CAA cites to its amicus brief accepted by the District Court for the arguments it proposes to make that Costa-Hawkins is not preempted by the ADA.

Opening Br. at 12, 46–47 (citing to CAA's amicus brief filed below for arguments CAA wishes to make before the District Court). As a practical matter, the District Court's denial of intervention has had no actual negative impact on CAA's ability to represent its interests, because it has already accomplished exactly what it said it sought intervention in order to do.

The District Court also appropriately exercised its discretion to conclude that CAA did not satisfy the requirements for permissive intervention because its application was untimely, and CAA's intervention would unduly delay and prejudice the original Parties by delaying ultimate resolution of this case.

For all of these reasons, this Court should affirm the District Court's Order.

## ISSUES PRESENTED

1. Whether the District Court appropriately exercised its discretion when it held that CAA's motion to intervene as of right and by permission, filed over four years after it learned of this case, was untimely; and

2. Whether the District Court correctly held, in the alternative, that CAA's motion to intervene as of right should be denied because CAA failed to make a "compelling" or "very compelling" showing that existing Parties would not adequately represent its interests.

4

## STATEMENT OF THE CASE

## I.  THE UNDERLYING DISABILITY DISCRIMINATION CLAIMS

In 2019, Plaintiffs filed this class action lawsuit asserting that they and other people who need accessible housing had no opportunity to access the benefit of the City of Oakland's rent control Program. 3-AER-396–416. The rent control Program sets a limit on annual rent increases for most rental units within the City, providing tens of thousands of Oakland tenants with stability and protection from displacement. 3-AER-397. However, the Program does not apply to buildings that were constructed after January 1, 1983. 3-AER-398. As of that date, there were no state or federal building accessibility requirements for privately-funded multifamily buildings. *See, e.g.*, 24 C.F.R. § 100.205(a) (imposing accessibility requirements as of March 13, 1991); 3-AER-398. This means that none of the rental units currently covered by the City's rent control Program were required by law to be accessible to people with mobility disabilities, and that few (if any) are actually accessible. 3-AER-398.

In 2025, the District Court granted partial summary judgment to Plaintiffs on their prima facie case of disparate impact discrimination. 2-AER-217. The Court found that few if any units currently covered by the rent control Program are accessible, and that Plaintiffs and the class are consequently denied a meaningful

5

opportunity to benefit from the Program's protections against excessive annual rent increases. 2-AER-216–17.

## II.  THE COSTA-HAWKINS ACT

This lawsuit has implicated the State of California's Costa-Hawkins Rental Housing Act from the very beginning. Section 1954.52(a)(2) of Costa-Hawkins allows landlords to set initial and subsequent rents for units "already exempt" from a city rent control program, and section 1954.52(a)(1) does the same for all units certified for occupancy after February 1, 1995. Cal. Civ. Code § 1954.52(a)(1)-(2). By virtue of these provisions, Costa-Hawkins effectively exempts both sets of units from any local rent control program.

As relevant here, these provisions of Costa-Hawkins prevent the City of Oakland from expanding its rent control Program to include any units constructed after January 1, 1983. Costa-Hawkins therefore conflicts with the relief that Plaintiffs seek: expansion of the City's rent control Program to include units that were required to be accessible when constructed, all of which were necessarily built after the rent control Program's current January 1, 1983 cutoff date.[1]

---

[1]     Any building with four or more units that was certified for occupancy after March 13, 1991, is required to have at least some accessible units. 24 C.F.R. § 100.205(a); Cal. Code Regs., tit. 24, §§ 202 (defining "covered multifamily dwelling" as buildings with four or more dwelling units), 1101A.1-1102A.4 (noting applicability of requirements). Generally speaking, if a building has an elevator, all units must be accessible; if not, the requirements apply only to units on the ground floor. *See* 42 U.S.C. § 3604(f)(7) (defining "covered multifamily

6

If the District Court granted Plaintiffs' requested relief and found that it was reasonable to expand Oakland's rent control Program to include units that were required to be accessible when constructed—notwithstanding the conflicting provisions in sections 1954.52(a)(1) and (2)—all other provisions of Costa-Hawkins would continue to apply to the newly covered units, including the provision that allows landlords to increase rents to market rate when a tenant vacates a unit. *See* Cal. Civ. Code §§ 1954.52(a), 1954.53(a)-(c).

## III. THE EARLY IDENTIFICATION OF THE ISSUE OF PREEMPTION OF COSTA-HAWKINS BY THE PARTIES AND THE COURT

Plaintiffs recognized the conflict raised by Costa-Hawkins in their 2019 Complaint. 3-AER-400 ¶ 16 ("Under the ADA, Oakland must reasonably modify its [Program] to avoid . . . discriminatory impact. And, because the ADA preempts conflicting state and local laws, this obligation applies even if the necessary changes would otherwise be barred by the Costa-Hawkins Rental Housing Act."); *see also id.* ¶¶ 40, 91 (discussing Program cut-off date reinforced by Costa-Hawkins and preemption). The Parties further addressed Costa-Hawkins in briefing the City's Motion to Dismiss. 3-AER-384 ("Plaintiffs recognize that the state's Costa-Hawkins Rental Housing Act bars applying the [Program] to newer rental units, but claim that the ADA preempts the Costa-Hawkins Act."); *see also* 1-SER-

---

dwellings" under federal law); 24 C.F.R. § 100.201 (same); Cal. Gov't Code § 12955.1.1 (defining "covered multifamily dwellings" under state law).

255–56 (arguing that "[t]o the extent . . . the provisions of [Costa-Hawkins] conflict with" Plaintiffs' proposed extension of the 1983 cutoff date, "they must be preempted by the ADA"). After the City moved to dismiss, 3-AER-376–95, Plaintiffs sent and filed on the docket a Notice of Constitutional Question to the California Attorney General, providing notice that Plaintiffs' requested relief could implicate Costa-Hawkins. 1-SER-227–29.

In April 2020, the District Court denied the City's Motion to Dismiss. 3-AER-348–65. Although the District Court declined to rule on the issue of preemption because it was "not actually before the court," 3-AER-364 n.9, the Court acknowledged the ADA preemption issue and stated that "it is well established that the ADA's reasonable modification requirement may preempt state law," and concluded that "the possibility that a modification might preempt state law does not automatically render it unreasonable," 3-AER-364. The following year, the District Court granted Plaintiffs' Motion for Class Certification. 3-AER-304.

## IV. PROCEDURAL HISTORY AFTER CAA LEARNED OF THIS CASE IN 2021

CAA's Executive Vice President of Legal Affairs declared that CAA first became aware of this litigation in February 2021. 2-AER-172. Despite the fact that the possible preemption of Costa-Hawkins was directly put at issue in the Complaint, 3-AER-400, 405, 413, and Motion to Dismiss, 3-AER-384, 390–91,

CAA did not move to intervene. After a period of unsuccessful settlement negotiations, the Parties completed fact and expert discovery in March 2024. 1-SER-221–22.

In April 2024, Plaintiffs filed their Motion for Summary Judgment. 1-SER-186–216. Yet again, Plaintiffs raised the issue of Costa-Hawkins, arguing that the ADA's reasonable modification requirement can preempt conflicting state and local law. 1-SER-214–15. CAA did not move to intervene.

The District Court then stayed summary judgment briefing to allow the Parties to separately brief motions to exclude proposed expert testimony. 1-SER-181–85. In February 2025, the District Court excluded the City's "economic" expert, who purported to provide expert opinion on the economic impacts of expansion of the City's rent control Program. 1-SER-164–71. The City moved for reconsideration of the District Court's order excluding the expert, 1-SER-153–62, which the District Court denied in June 2025 on the grounds that he was not qualified to conduct an economic analysis of the impact of expanding rent control. 1-SER-124–27. CAA did not move to intervene.

After the District Court's ruling on *Daubert* motions, the Parties completed summary judgment briefing. In their May 2025 combined Reply and Opposition brief, Plaintiffs again contested the City's economic arguments and argued that the

ADA preempts Costa-Hawkins. 1-SER-150–51. Still, CAA did not move to intervene.

In August 2025, the Court entered partial summary judgment in Plaintiffs' favor. 2-AER-210–21. In September, the Court formally invited the Attorney General of the State of California to intervene for the limited purpose of opining on the question of whether the ADA preempts Costa-Hawkins. 1-SER-118–19. The California Attorney General accepted the Court's invitation to intervene in November, 2-AER-207–09, and only then did CAA file its Motion to Intervene. 2-AER-185–206.

## V.   CAA'S MOTION TO INTERVENE

In its Motion, CAA explained that it sought to intervene to "defend the constitutionality" of Costa-Hawkins. 2-AER-192. The only elements of intervention as of right that were in dispute were the timeliness of CAA's application and the adequacy of existing parties in representing CAA's interests. 1-SER-096–102; Fed. R. Civ. P. 24(a)(2). On timeliness, CAA argued that although it first learned of the litigation in 2021, the constitutionality of Costa-Hawkins had not been "squarely raised" before the District Court ruled on cross-motions for Summary Judgment in August 2025. 2-AER-201. On adequacy, CAA cited to the City of Oakland's isolated statement that it was "in no position to defend against a modification to section 1954.52(a)(2)." 2-AER-203 (quoting 2-AER-269). CAA

10

also stated that it had "no reason to doubt that [the Attorney General] will mount a defense of the Act," but argued that the State's interests were different from those of CAA. 2-AER-203.

CAA later stated in a Joint Case Management Statement that, if permitted to intervene, it would "not seek to reopen discovery" and would "not present or identify any witnesses at trial," only that it would rely on the declarations already filed in support of its motion and legislative history of Costa-Hawkins. 1-SER-115. The California Attorney General filed a statement respecting ADA preemption of Costa-Hawkins in February 2026. 2-AER-115–35. The District Court denied CAA's Motion, 1-AER-002–14, and CAA filed this appeal.

## VI.  PROCEDURAL HISTORY AFTER THE DISTRICT COURT DENIED CAA'S MOTION TO INTERVENE

After the District Court denied CAA's Motion to Intervene, the case continued to move towards a final resolution. The Parties completed supplemental summary judgment briefing. 2-AER-050–80, 081–111; 1-SER-016–35. CAA then filed an amicus brief in opposition to Plaintiffs' Supplemental Motion for Summary Judgment in which it made the same arguments it indicated it would make in intervention in the prior Joint Case Management Statement, and also offered extensive expert references. 1-SER-036–69. Plaintiffs filed a response. 1-SER-004–15. On May 28, 2026, the District Court heard argument on the

11

supplemental motions for summary judgment. 1-SER-002. As of the date of filing, the motions remain pending. 2-SER-406.

## SUMMARY OF THE ARGUMENT

II. The District Court appropriately exercised its discretion when it concluded that CAA's Motion to Intervene was untimely. In 2021, CAA learned of this case and the potential impact on its members' interests, but did not file its motion for over four years. The stage of proceedings, length of and reason for delay, and prejudice to the existing parties all weigh against the conclusion that CAA's motion was timely.

II.A. CAA attempted to intervene in the midst of summary judgment, an extremely late stage in the case. CAA waived its argument that it sought to intervene at a "new stage" in the litigation because it did not make this argument below. Regardless, the time of intervention was not a "new" stage—it was the last stage for all concerned. The District Court has spent years substantially engaged in this case, including ruling on a motion to dismiss, a motion for class certification, *Daubert* motions, and partially resolving cross-motions for summary judgment. Fact and expert discovery are concluded, and there has not been a change in circumstances to justify intervention as in other cases in which late-stage interventions were permitted. The lawsuit is "within sight of the terminal," *Brown*

12

*v. Google LLC*, 172 F.4th 1128, 1133 (9th Cir. 2026), and CAA's motion was far too late.

II.B. CAA's over four-year delay in seeking intervention is not justified, especially given the fact that it became aware of this case in February 2021 and should have known that the possible preemption of Costa-Hawkins was at issue and that its interests might be adversely affected at that time. CAA claims that its members have an economic interest in the preservation of Costa-Hawkins. Because Plaintiffs raised the potential for ADA preemption of Costa-Hawkins in their 2019 complaint and in a Notice of Constitutional Question to the California Attorney General, and because the District Court recognized the preemption issue in its 2020 Order denying the City's Motion to Dismiss, CAA had reason to know for years that its interests could be adversely affected.

CAA waived its argument that the timeliness clock should run from the date that it learned that the City supposedly would not defend Costa-Hawkins, because it did not raise this argument below until its reply. Even considering this argument, if the City was unwilling to defend Costa-Hawkins, that was true long before the District Court's Order on Summary Judgment. The City's opposition to Costa-Hawkins's limits on local rent control was highlighted and extensively discussed in Plaintiffs' Motion for Summary Judgment filed in April 2024, including City Council resolutions from as early as 2016. In reality, the City has in fact vigorously

13

argued that Costa-Hawkins's limitations on rent control should not be preempted in the context of this case.

II.C. Finally, CAA's intervention this late in the case will prejudice the Parties. The Parties have briefed and argued cross-motions for summary judgment, and the Parties are in general agreement that the record is complete and the case is appropriate for disposition at summary judgment. CAA's intervention will only result in additional briefing and argument that will further delay resolution of this case filed over seven years ago.

III. The District Court also correctly determined that, in the alternative, the existing Parties would adequately represent CAA's interests.

III.A. The District Court applied the correct legal standard. Because CAA and the City share the same ultimate objective, CAA must make a compelling showing to overcome the presumption of adequate representation. CAA is also required to make a *very* compelling showing where a government is acting on behalf of its constituency. Here, CAA did not make any showing at all.

III.B. By tenaciously opposing Plaintiffs' ADA claims, the City has maintained a steadfast stance that Costa-Hawkins should not be preempted in the context of this case, and that Costa-Hawkins stands in the way of the relief Plaintiffs seek. CAA has offered no reason to believe that the City will abandon these arguments. Although the City itself is not a proponent of Costa-Hawkins, it

14

has consistently argued that Plaintiffs' proposed remedy would fundamentally alter its rent control Program based in part because it is barred by Costa-Hawkins. CAA also failed to point to any particular meritorious argument it would assert that the City is likely to abandon or concede.

III.C. Further, CAA has not shown that the Attorney General does not adequately represent its interests. Any arguments concerning Attorney General Bonta's prior legislative advocacy were either raised on reply or not raised at all to the District Court, and have therefore been waived. Even if this Court were to consider such arguments, they do not amount to a compelling showing that the Attorney General does not adequately represent the interests of CAA. In his brief filed below, the Attorney General merely summarized the preemption framework and proposed a remedy that he believed would ameliorate conflict with Costa-Hawkins and preserve the purpose of the law, if the District Court found that the ADA required some expansion of the rent control Program.

III.D. Finally, CAA will not offer any necessary elements to the proceedings. CAA failed to explain any viable argument it might make that the existing Parties would be likely to neglect. CAA also failed to explain what expertise it could bring to this case that other Parties cannot access. The legislative history of Costa-Hawkins is equally available to the City and the California Attorney General. At any rate, the legislative history of Costa-Hawkins is irrelevant to the ADA

15

fundamental alteration analysis, which considers the purpose of the program to which Plaintiffs seek an accommodation (here, the rent control Program). The legislative history of Costa-Hawkins is also irrelevant to a preemption analysis, which considers the purpose of the federal law at issue, not the conflicting state law.

IV. The District Court also appropriately exercised its discretion to deny permissive intervention on timeliness grounds for the reasons it denied intervention as of right. CAA's intervention would also unduly delay and prejudice the original Parties.

## ARGUMENT

## I.    STANDARD OF REVIEW

This Court reviews a decision to deny intervention as of right de novo, except that a denial based on timeliness is reviewed for an abuse of discretion. *Brown*, 172 F.4th at 1133 (citing *Kalbers v. U.S. Dep't of Just.*, 22 F. 4th 816, 822 (9th Cir. 2021)). A denial of permissive intervention is also reviewed for an abuse of discretion. *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015). "A district court abuses its discretion if its decision is based on an erroneous conclusion of law or if the record contains no evidence on which it rationally could have based its decision." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1005

16

(9th Cir. 2002)); *see also Or. Nat. Res. Council v. Marsh*, 52 F.3d 1485, 1492 (9th Cir. 1995) (noting same), *as amended on denial of reh'g*.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT CONCLUDED THAT CAA'S INTERVENTION ATTEMPT WAS UNTIMELY.

This lawsuit implicated CAA's interests in Costa-Hawkins from the date Plaintiffs filed their complaint in 2019. Yet CAA chose not to intervene until this case was rapidly approaching resolution, over four years after it learned of the litigation. "The timeliness requirement seeks to 'prevent a tardy intervenor from derailing a lawsuit within sight of the terminal.'" *Brown*, 172 F.4th at 1133 (quoting *Kalbers*, 22 F.4th at 823). To evaluate whether a motion to intervene is timely, the Ninth Circuit considers: "the stage of the proceeding at which an applicant seeks to intervene," "the reason for and length of the delay," and "the prejudice to other parties." *Id.* (quoting *Kalbers*, 22 F.4th at 822). The Court "assess[es] each of these factors by reference to the 'crucial date' when 'proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties.'" *Id.* (quoting *Kalbers*, 22 F.4th at 822). CAA does not dispute that the District Court applied the correct legal standards and tests. *See* Opening Br. at 27. Applying these factors, the District Court appropriately exercised its discretion to conclude that CAA's motion was untimely. 1-AER-006– 11.

**A.    CAA sought to intervene while summary judgment was pending—an extremely late stage in the litigation.**

CAA contends that it sought to intervene at a "new stage" of litigation, Opening Br. at 27–30, but that is not factually correct. As opposed to intervening at a "new stage," CAA attempted to intervene in the midst of dispositive motion practice after the District Court had made a partial ruling but before it had issued its final decision. 1-AER-007. CAA's motion was therefore untimely.

As an initial matter, CAA waived its "new stage" argument because CAA never presented it below. At the District Court, CAA argued only that its intervention was appropriate because the Court invited the Attorney General to intervene. 2-AER-201. CAA never argued to the District Court that it was intervening at a "new stage" or "entirely new phase" or litigation. *See* 2-AER-201. Therefore, any argument to this effect is waived. *See Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) ("[A]n appellate court will not consider issues not properly raised before the district court.").

Even if the Court were to entertain these new arguments, the District Court correctly concluded that CAA sought to intervene too late in the day based upon the District Court's extensive engagement with this case. 1-AER-007. The case was filed in 2019. 3-AER-396–416. Since filing, the District Court ruled on a motion to dismiss, 3-AER-365, a motion for class certification, 3-AER-304, and *Daubert* motions, 1-SER-180; the Parties completed fact and expert discovery, 1-

18

SER-221–22; and the District Court partially resolved the Parties' cross-motions for summary judgment, 2-AER-221. This level of engagement weighs against allowing intervention at this late stage.

As the District Court recognized, this case is akin to *League of United Latin American Citizens v. Wilson* ("*LULAC*"), in which the Ninth Circuit upheld an order denying intervention as untimely where the parties had litigated a temporary restraining order, a preliminary injunction, provisional class certification, a motion to dismiss, and a motion for summary judgment. 131 F.3d 1297, 1303 (9th Cir. 1997); *see also Marsh*, 194 F.3d at 1051 (holding that "substantial engagement by the district court with the issues in a case," through class certification and summary judgment, "weighs heavily against allowing intervention as of right" (quoting *LULAC*, 131 F.3d at 1303)). As in *LULAC*, the District Court has engaged with this case over many years and many motions, including class certification, a motion to dismiss, and a motion for summary judgment. The Parties also have generally agreed that all evidence is before the District Court and that it is appropriate for disposition at summary judgment. 2-SER-293. This lawsuit is "within sight of the terminal," *Brown*, 172 F.4th at 1133 (quoting *Kalbers*, 222 F.4th at 823), and CAA's motion is simply too late.

Further, there has not been any change in circumstances like the one that justified intervention in *Smith v. Los Angeles Unified School District*, 830 F.3d 843,

19

856–57 (9th Cir. 2016). There, the parties renegotiated a key term of a consent decree which resulted in a material change in education settings for groups of special education students. *Id.* at 854–56. Similarly, in *United States v. Oregon*, the court found a "change of circumstance" where two parties gave notice of intent to withdraw from or renegotiate a settlement agreement. 745 F.2d 550, 552 (9th Cir. 1984) ("*Oregon I*"). In this case, by contrast, the Parties continue to litigate the same issues and continue to maintain the same positions that they have for over seven years: Plaintiffs seek expansion of the City of Oakland's rent control Program so that they have a meaningful opportunity to access its protections, as required by the ADA, and the City opposes any such expansion, including by arguing that expansion is prohibited by the conflicting provisions of Costa-Hawkins, and that those provisions should not be preempted in the context of this case. *See infra* Part III.B. The District Court has extensively engaged with this case, and circumstances have not changed to justify intervention at this late stage.

**B.     The District Court appropriately concluded that CAA's four-year delay and lack of adequate explanation weigh strongly against intervention.**

CAA knew that the economic interests of its members were at issue in this case when it learned of the litigation in February 2021, and it should have moved to intervene at that time. *See United States v. Oregon*, 913 F.2d 576, 589 (9th Cir. 1990) ("*Oregon II*") (explaining that an intervenor must act as soon as it "knows or

has reason to know that [its] interests might be adversely affected by the outcome of the litigation." (quoting *United States v. City of Chicago*, 870 F.2d 1256, 1263 (7th Cir. 1989))).

As the District Court correctly noted, it has been clear that Plaintiffs' ultimate relief conflicts with Costa-Hawkins "[f]rom the moment the complaint was filed in 2019." 1-AER-008; *see also* 3-AER-300 ¶ 16 ("Under the ADA, Oakland must reasonably modify its Rent Adjustment Program to avoid this discriminatory impact. And, because the ADA preempts conflicting state and local laws, this obligation applies even if the necessary changes would otherwise be barred by the Costa-Hawkins Rental Housing Act."). Soon after filing the Complaint, Plaintiffs provided the California Attorney General with a Notice of Constitutional Question raising the issue of ADA preemption of Costa-Hawkins, and filed the Notice on the public docket. 1-SER-227–29. In April 2020, the District Court itself acknowledged the ADA preemption issue in its Order denying the City's Motion to Dismiss. 3-AER-364 n.9. Thus, in February 2021 when CAA learned of the litigation and reviewed the filings on the docket, it would have seen that the issue of Costa-Hawkins and its members' economic interests had been "squarely raised." 2-AER-201.

CAA argues that the timeliness clock should run from the date that it learned that the City supposedly would not defend Costa-Hawkins, Opening Br. at 34, but

21

CAA did not make that argument below until Reply. *Contrast* 2-AER-202 (arguing that CAA moved to intervene when it learned that the case "squarely raise[d]" the constitutionality of Costa-Hawkins) *with* 1-SER-080 (arguing that CAA was "entitled to rely on the presumption that the government would defend the law" until it "discovered" in the Order on summary judgment that the City supposedly "disavow[ed]" any defense of Costa-Hawkins). Because arguments raised for the first time on Reply are deemed waived, *Marsh*, 194 F.3d at 1052, the District Court appropriately chose not to consider the City's new argument. *See* 1-AER-010 (noting that CAA "shift[ed] ground" on Reply and that the Court would not consider argument that "the time should run from the moment when CAA discovered that Oakland would not defend Costa-Hawkins.").

Even setting aside waiver, CAA should have been aware that the City was in favor of reform of Costa-Hawkins far sooner than the District Court's Order on Summary Judgment. Plaintiffs explicitly discussed the City's desire to be free from the limitations of Costa-Hawkins in their Motion for Summary Judgment filed in May 2024. 1-SER-203–04 (discussing deposition testimony from City's 30(b)(6) designee that if state law (e.g., Costa-Hawkins) were different, designee would recommend change to January 1, 1983 cutoff date). And, beginning in 2016, the City Council has passed multiple resolutions seeking repeal or reform of Costa-Hawkins. 1-SER-204 (discussing resolutions passed). In this case, the City has

consistently argued against preemption of Costa-Hawkins, *see infra* Part III, but the City's desire for reform of Costa-Hawkins as a whole has been apparent for years.

Contrary to CAA's assertions, the District Court's holding on timeliness is not in tension with its alternative holding that CAA's interests were adequately represented by the City. If CAA now argues that the City does not adequately represent its interests because it has expressed a desire to be free of Costa-Hawkins's limitations on local rent control programs, that was true in 2021 when CAA learned of this lawsuit, and therefore CAA should have moved to intervene at that time. In reality, the City has steadfastly argued that Plaintiffs' proposed modification is unreasonable because it violates Costa-Hawkins and that the ADA should not preempt Costa-Hawkins in this case. *See infra* Part III.B. Should the Court reverse the District Court's ruling on timeliness, the Court should still affirm the District Court's alternative holding on adequacy because the City's arguments against preemption of Costa-Hawkins show that it adequately represents CAA's interests. *Id.*

## C. The Parties will be prejudiced by CAA's delay.

Finally, the Parties will also be prejudiced if CAA is permitted to intervene at this late stage. As of this filing, the Parties have briefed and argued cross-motions for summary judgment twice. 2-SER-262–322, 323–70. In August 2025,

the District Court heard argument on cross-motions for summary judgment, 2-SER-262–322, and held that Plaintiffs were entitled to summary judgment on their prima facie case of disparate impact discrimination, 2-AER-217. Then, the District Court ordered additional briefing on whether Plaintiffs' proposed modification would fundamentally alter the City's rent control Program, 2-AER-220–21, which the Parties provided and argued in May 2026. 1-SER-002. The Parties are in general agreement that the record is complete and the case is appropriate for disposition at summary judgment. 2-SER-293. If CAA is permitted to intervene before the District Court makes a final ruling, and seeks to file yet another brief in addition to its already-accepted *amicus*, 1-SER-036–69, then the Parties may have to submit yet more supplemental briefing and further delay the resolution of this matter. If CAA is permitted to intervene after the District Court rules in favor of Plaintiffs, CAA will likely file a Motion for Reconsideration, yet again necessitating additional briefing and causing more delay. After almost seven years of litigation, the Parties will face significant prejudice and delay if CAA is permitted to intervene so close to the finish line.

All three timeliness factors weigh against intervention, and the District Court did not abuse its discretion in denying CAA's motion as untimely.

**III.    IN THE ALTERNATIVE, THE DISTRICT COURT ALSO CORRECTLY DENIED INTERVENTION AS OF RIGHT BECAUSE EXISTING PARTIES WILL ADEQUATELY REPRESENT CAA'S**

**INTERESTS IN THIS LITIGATION.**

Applying the correct legal standard, the District Court properly determined that the City adequately represented CAA's interests. The City and CAA share the same ultimate objective: a finding that Oakland's rent control Program should not be expanded to include later-built units that were required to be accessible, and that sections 1954.52(a)(1) and (2) of Costa-Hawkins should not be preempted by the ADA under the facts of this case. The California Attorney General also seeks to preserve Costa-Hawkins (or the purposes of Costa-Hawkins) to the extent possible. Given these shared objectives, CAA failed to make the necessary "compelling showing," that its interests were not adequately represented by existing parties, let alone the "very compelling showing" required where a government is acting on behalf of its constituency. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citation modified).

CAA never made any arguments concerning the California Attorney General's prior legislative positions on Costa-Hawkins before the District Court; these arguments are therefore waived and should not be considered by this Court.[2] *Marsh*, 194 F.3d at 1052 (declining to consider an alternative rationale for untimely intervention raised for the first time on appeal and noting that "an appellate court

---

[2] Other arguments concerning the Attorney General's position were also improperly made and should similarly be disregarded. 1-AER-013 n.1.

25

will not consider issues not properly raised before the district court."). Finally,

CAA will not offer any necessary elements to the proceeding that other Parties will

neglect—the City has made all arguments that CAA proposes to offer.[3]

### A. The District Court applied the correct legal standard.

A non-party seeking intervention as of right under Rule 24(a)(2) must

establish that its asserted interests will "not be adequately represented by existing

parties." *Arakaki*, 324 F.3d at 1083 (citing *Donnelly v. Glickman*, 159 F.3d 405,

409 (1998)). The Ninth Circuit uses a three-part test to make that determination:

> (1) whether the interest of a present party is such that it will
> undoubtedly make all of a proposed intervenor's arguments;
> (2) whether the present party is capable and willing to make such
> arguments; and (3) whether a proposed intervenor would offer any
> necessary elements to the proceeding that other parties would neglect.

*Id.* at 1086 (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778

(9th Cir. 1986)); *see also* 1-AER-011 (District Court applying this standard). As the

District Court correctly pointed out, "the most important factor in assessing the

adequacy of representation is how the interest compares with the interests of

---

[3]     To the extent CAA also seeks intervention so that it can "appeal an adverse ruling" if existing parties choose not to bring their own appeal, Opening Br. at 8, such intervention is premature. Moreover, "[t]o appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate [Article III] standing." *Cal. Chamber of Com. v. Council for Edu. & Rsch. on Toxics*, 29 F.4th 468, 476 (9th Cir. 2022) (citing *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019)). It is far from clear that CAA would be able to independently establish Article III standing in such a circumstance.

existing parties." 1-AER-011 (quoting *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (citation modified)).

Where, as here, "an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki*, 324 F.3d at 1086. CAA characterizes this presumption as arising only when "the applicant's interest is identical to one of the present parties," Opening Br. at 37–38, but this is a distinction without a difference. When an existing party and a proposed intervenor share the same ultimate objective, their interests are functionally identical. *See Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 951 (9th Cir. 2009) (finding that parties shared the same "ultimate objective," where any ruling for existing party would also accomplish intervenor's asserted interest, making their objectives and interests not "meaningfully distinct").

A proposed intervenor who has the same "ultimate objective" as an existing party can rebut the presumption of adequacy only by making a "compelling showing to the contrary." *Perry*, 587 F.3d at 951 (quoting *Arakaki*, 324 F.3d at 1086). Such a "compelling showing" can be made where, for example, the existing government party and the proposed intervenor have "fundamentally differing points of view . . . on the litigation as a whole." *See Citizens for Balanced Use*, 647 F.3d at 899 (finding "compelling showing" standard established where government

27

"reluctantly" supported intervenor's objective, while simultaneously seeking to overturn the district court decision that required it to take that stance).

Similarly, there is a presumption of adequacy where, as here "the government is acting on behalf of a constituency that it represents." *Arakaki*, 324 F.3d at 1086 (citation modified). "In the absence of a *very compelling* showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Id.* (citation modified) (emphasis added); *see also* 1-AER-011–12 (applying standard); *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020) (applying *Arakaki* to require a "very compelling showing" to rebut a "presumption of adequacy" when "the government is acting on behalf of a constituency it represents" or when the applicant and existing party "have the same ultimate objective").

"In order to make a very compelling showing of the government's inadequacy, the proposed intervenor must demonstrate a likelihood that the government will abandon or concede a potentially meritorious" argument. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 444 (9th Cir. 2006).

## B. CAA failed to make a compelling showing that the City would not adequately represent its interests.

CAA and the City of Oakland share the same ultimate objective: a finding that Oakland's rent control Program should not be expanded to include later-built units that were required to be accessible, and that sections 1954.52(a)(1) and (2) of

28

Costa-Hawkins should not be preempted by the ADA under the facts of this case. *See* 1-AER-012–13 (finding that the City has consistently argued "that the ADA has not been violated and the existing RAP should remain unmodified," "which is the best defense of Costa-Hawkins in light of federal preemption principles"); *see also* 2-AER-195 (CAA and its members seeking to avoid a ruling that Costa-Hawkins's "new construction exemptions" contained in sections 1954.52(a)(1) and (2) "are unconstitutional as applied in the City of Oakland").

The District Court correctly found that CAA failed to make a "compelling showing" that its interests would not be adequately represented by existing Parties in this case. 1-AER-011–13. As the District Court recognized, by arguing that the ADA has not been violated and the existing rent control Program should remain unmodified, "the City has consistently defended CAA's members' economic interests," and that CAA had offered "no reason to believe the City will not continue to do so." 1-AER-012. Because the City has consistently defended CAA's economic interests in this way, CAA must make a "very compelling showing" of inadequacy to overcome the presumption of adequate representation. *See Oakland Bulk*, 960 F.3d at 620 (requiring a "very compelling showing" where a governmental entity "was already acting on behalf of [intervenors'] interests").

Although CAA may choose to litigate the case differently if it were a party, the compelling showing must be something more than "dispute[s] over litigation

29

strategy or tactics," as "mere differences in litigation strategy are not enough to justify intervention as a matter of right." *Perry*, 587 F.3d at 954 (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 402–03 (9th Cir. 2002)) (citation modified); *see also LULAC*, 131 F.3d at 1306 (upholding denial of intervention of public interest group that drafted and sponsored ballot proposition because there was "no reason to believe" that the government would not "argue vehemently in favor" of the proposition's constitutionality); *L.A. SMSA Ltd. P'ship v. City of Los Angeles*, 817 F. App'x 350, 352 (9th Cir. 2020) (finding that existing party's extensive summary judgment briefing supported adequacy and holding that proposed intervenor's "desire to defend [Plaintiffs' challenge] on grounds other than the ones the City relied on at the summary-judgment stage is . . . insufficient to overcome the presumption" of adequate representation).

Here, the City has consistently argued that Plaintiffs' proposed remedy is not reasonable, not necessary, and that it would "fundamentally alter" its rent control Program, because expanding its Program to include units that were required to be accessible when constructed is barred by sections 1954.52(a)(1) and (2) of Costa-Hawkins. *See, e.g.*, 3-AER-346 (asserting "fundamental alteration" and "undue burden" defenses to proposed modification of adopting to a new Program exemption date that is inconsistent with sections 1954.52(a)(1) and (2)); 3-AER-373 ("Plaintiffs seek to fundamentally alter the Rent Adjustment Program."); 3-

30

AER-391 ("Modifying the Rent Adjustment Program by applying rent control to newer units in express violation of state law is not a reasonable accommodation, nor necessary to avoid discrimination, and it would fundamentally alter the Program.").

Far from "abandon[ing] or conced[ing]" such arguments, *Lockyer*, 450 F.3d at 444, the City continued to assert them forcefully at summary judgment, arguing that Plaintiffs' requested accommodation is not necessary, not reasonable, a fundamental alteration, and—critically—that it is foreclosed by Costa-Hawkins. *See, e.g.*, 2-AER-058–66, 227–36, 261–71 (arguing that Costa-Hawkins is not preempted and that Plaintiffs' proposed modification would fundamentally alter it); *see also* 2-AER-066–80 (arguing that modification is not reasonable or necessary, and again that it will "fundamentally alter" Costa-Hawkins). Indeed, the City spends several pages of its briefing expressly arguing that Plaintiffs' proposed modification "is a fundamental alteration to Costa Hawkins." 2-AER-078; *see also* 2-AER-063–66.

If any one of the City's arguments against Plaintiffs' requested remedy were successful, it would result in a finding that sections 1954.52(a)(1) and (2) of Costa-Hawkins are not preempted by the ADA as it applies to Oakland's rent control Program—CAA's ultimate objective. *See* 1-AER-011–13. As the District Court correctly recognized, any arguments against preemption are unlikely to succeed:

31

the "best" defense of Costa-Hawkins "in light of federal preemption principles" is the City's arguments "that the ADA has not been violated and the existing [Program] should remain unmodified." 1-AER-013. Thus, by arguing against necessity and reasonableness and for its fundamental alteration defense, *see, e.g.*, 2-AER-066–80, the City is inherently arguing against the preemption of sections 1954.52(a)(1) and (2) of Costa-Hawkins. *See* 28 C.F.R. § 35.130(b)(7)(i) (public entities are only required to make modifications that are reasonable, necessary, and do not "fundamentally alter the nature of the service, program, or activity" in question).

In its briefing below, CAA failed to point to any particular potentially-meritorious argument it would assert that either the Attorney General or the City is likely to abandon or concede. *See* 1-AER-012 ("CAA argues that its expertise could inform the 'reasonableness' of the requested accommodation, [1-SER-089], but—again—does not explain what knowledge it brings to bear that other Parties cannot access and why that knowledge relates to the reasonableness of an accommodation."). Without identifying any (meritorious) argument it would make that the City has neglected, CAA cannot make the required "compelling" or "very compelling" showing of inadequacy necessary to overcome the presumption of adequate representation. *See, e.g.*, *Oakland Bulk*, 960 F.3d at 620 (upholding denial of intervention, where intervenor failed to provide actual evidence that City of

Oakland's broader litigation interests would lead it to take an "undesirable legal position," and where, as here, the City had actually adopted intervenor's arguments at the summary judgment stage).

The City has already made the exact arguments that CAA proposes to make if allowed to intervene. *See* 2-AER-058–66 (arguing that Costa-Hawkins should not be preempted in the context of this case), 078 (arguing that Plaintiffs' proposed modification is not reasonable, not necessary, and would fundamentally alter Costa-Hawkins). Given this fact, CAA failed to make a compelling (or very compelling) showing that the City would likely abandon or concede potentially-meritorious arguments, and the District Court's denial of intervention should be upheld.

**C.     CAA also has not shown the Attorney General is not adequately representing its interests, and its arguments concerning Attorney General Bonta's prior legislative advocacy have been waived.**

CAA's arguments concerning the Attorney General's brief, especially any additional facts concerning Attorney General Bonta's prior legislative advocacy, were either raised on reply or not raised at all at the District Court level, and should not be considered here. *Marsh*, 194 F.3d at 1052 (declining to consider an alternative rationale for untimely intervention raised for the first time on appeal and noting that "an appellate court will not consider issues not properly raised

33

before the district court."). Regardless, CAA also has not shown that the Attorney General will not adequately represent its interests in preserving Costa-Hawkins.

As an initial matter, CAA did not make any of its arguments regarding Attorney General Bonta's history as a legislator and his prior attempted reforms of Costa-Hawkins, Opening Br. 8, 18, 42–43, at the District Court. *Contrast* 2-AER-185–206 *with* 1-SER-072–91 (no mention of Attorney General Bonta's prior activity as a legislator). The Attorney General's prior positions were well known to CAA at the time it filed its motion and reply, given that CAA asserts it "successfully defeated" multiple bills proposed by then-Assemblymember Bonta concerning modifications to Costa-Hawkins. Opening Br. at 8, 18. Far from raising prior legislative advocacy as a reason that the Attorney General's defense of Costa-Hawkins might be inadequate, CAA's original motion before the District Court said that it "has no reason to doubt that [the Attorney General] will mount a defense of the Act." 3-AER-203. Because they were not properly raised below, CAA's new arguments regarding the Attorney General are waived, and should not be considered here. *See Marsh*, 194 F.3d at 1052.

Even if the Court were to consider CAA's new arguments about Attorney General's past legislative advocacy, they do not amount to a "compelling showing" that the Attorney General is not adequately representing CAA's interests in this case. In his brief, the Attorney General simply summarized the constitutional

preemption framework that would apply to any conflicting provisions of Costa-Hawkins, if the District Court were to find that expansion of Oakland's rent control Program was a reasonable modification. 3-AER-123–31. The Attorney General then suggested an alternative remedy that would "moderate" any conflict with Costa-Hawkins. 3-AER-131–33. In the Attorney General's opinion, this remedy would be "less inimical to the statute's 'narrow' purpose of eliminating 'the strictest type of rent control that sets the maximum rental rate for a unit and maintains that rate after vacancy' statewide than broadening the RAP to essentially every existing apartment in Oakland." 3-AER-132.

CAA argues that this proposed alternative remedy indicates that the Attorney General is not defending the legality of Costa-Hawkins, but that is simply incorrect. Opening Br. at 44. The Attorney General merely proposed a remedy that he believed would ameliorate conflict with Costa-Hawkins and preserve the purpose of the state law, if the District Court found that some expansion of Oakland's rent control Program were required by the ADA. *See* 3-AER-132.

Arguing for a narrowing of Plaintiffs' requested remedy is not akin to abandoning a defense of the statute; in fact, it is trying to preserve the statute and its protections:

> [J]ust because the government theoretically may offer a limiting construction of a statute that is narrower than that of a party proposing intervention does not mean that the party has overcome the presumption of adequacy of representation. In order to make a "very

35

compelling showing" of the government's inadequacy, the proposed intervenor must demonstrate a likelihood that the government will abandon or concede a potentially meritorious reading of the statute.

*Lockyer*, 450 F.3d at 444. As in *Lockyer*, the Attorney General's position does not amount to an abandonment of the statute. At most, he is suggesting a limiting construction that would both maintain Costa-Hawkins's core purpose and comply with the requirements of the ADA. *See* 3-AER-132.

As the District Court properly found with respect to the Attorney General's position on preemption and the adequacy of its representation, CAA never articulated any arguments that it might make "that the Supremacy Clause does not apply under these circumstances and therefore that ADA preemption will not apply." 1-AER-013. CAA claims that it should not have had to "fully brief the merits of the Costa-Hawkins" issue as part of its motion to intervene. Opening Br. at 44. But CAA still had the burden to demonstrate that it had specific, potentially-meritorious arguments that neither the Attorney General nor the City of Oakland were likely to make, and it failed to do so. *See Lockyer*, 450 F.3d at 444. Without more, CAA did not make a compelling showing that the Attorney General will not adequately represent its interests.

### D. The District Court also correctly found that CAA would not "offer any necessary elements to the proceeding."

The final factor that courts consider when determining whether existing parties will adequately represent a would-be intervenor's interests is whether the

36

"proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086 (citation omitted). As the District Court correctly found, while CAA claimed that the Attorney General's brief regarding preemption did not make all of its arguments, CAA failed to "explain any *viable* argument it might make that the Supremacy Clause does not apply under these circumstances and therefore that ADA preemption will not apply," that existing Parties would be likely to neglect. 1-AER-013 (emphasis added). Similarly, while CAA claimed that "its expertise could inform the 'reasonableness' of the requested accommodation," the District Court correctly found that CAA failed to "explain what knowledge it brings to bear that other parties cannot access and why that knowledge relates to the reasonableness of an accommodation." 1-AER-012.

In its motion to the District Court, CAA's only argument on this point was that it was "well-positioned to provide the Court with information that the Attorney General may not be." 2-AER-203. However, the only "information" CAA offered to provide was that which was contained in "the declarations submitted in support of its intervention motion" or in "the legislative history of Costa-Hawkins." 1-SER-115 (affirming that CAA will not seek to reopen discovery and will rely only on these sources of information in any briefing to the Court). The legislative history of Costa-Hawkins is just as available to the City of Oakland and the

37

Attorney General as it is to CAA, and the information contained in CAA's declarations was already before the District Court, making CAA's intervention superfluous at best. *See Prete v. Bradbury*, 438 F.3d 949, 958 (9th Cir. 2006) (upholding denial of intervention where would-be intervenors "may have some specialized knowledge," but had "provided no evidence to support their speculation that [the government] lacks comparable expertise").

Moreover, even if CAA had access to some legislative history documents that the City and the Attorney General did not, this information would not bring any necessary elements into this case, because the purpose and legislative history of Costa-Hawkins is entirely irrelevant to the ADA's fundamental alteration analysis, and to the question of preemption.

By its plain text, the "fundamental alteration" defense to a reasonable modification claim under the ADA focuses on whether "the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity" in question. 28 C.F.R. § 35.130(b)(7)(i). Here, the public entity Program to which Plaintiffs seek meaningful access is Oakland's rent control Program, not Costa-Hawkins. *See* 2-AER-216–17 (finding no genuine dispute that Plaintiffs and the class are denied meaningful access to the City's rent control Program, and granting partial summary judgment on this issue). Accordingly, Oakland and any intervenors must "demonstrate that making

38

[Plaintiffs' requested] modifications would fundamentally alter the nature of the" rent control Program itself, not that these modifications would fundamentally alter Costa-Hawkins in some way. 28 C.F.R. § 35.130(b)(7)(i).

This Court's prior rulings confirm that the reasonable modification inquiry must focus on the goals of the program to be modified. For example, in *Where Do We Go Berkeley v. California Department of Transportation*, this Court held that a six-month delay in clearing an encampment was a fundamental alteration because it effectively required Caltrans to "house [p]laintiffs on its property until [p]laintiffs found new housing," and providing "housing solutions" was not part of Caltrans's existing program. 32 F.4th 852, 862 (9th Cir. 2022); *see also, e.g.*, *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) (explaining that the purpose of an ordinance is relevant to determine whether a modification to its enforcement is reasonable).

The purpose and legislative history of sections 1954.52(a)(1) and (2) of Costa-Hawkins are also irrelevant to any preemption analysis, because conflict preemption focuses on the purpose of the federal law at issue, not of the conflicting state or local one. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (finding preemption where the challenged state law is an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress," which is "a matter of judgment, to be informed by examining the *federal* statute as

39

a whole and identifying its purpose and intended effects") (citation modified); *Mi Familia Vota v. Fontes*, 129 F.4th 691, 709–11 (9th Cir. 2025) (considering the purpose of a federal voting law to increase voter participation, but not the purpose of conflicting Arizona law, in finding that the federal law preempted the state law).

In sum, CAA failed to point to any "necessary element to the proceedings" it would bring "that would be neglected otherwise," which further supports the District Court's finding that the existing Parties will adequately represent CAA's interest. 1-AER-012. The District Court's decision should be affirmed.

## IV. THE DISTRICT COURT ALSO APPROPRIATELY EXERCISED ITS DISCRETION TO DENY PERMISSIVE INTERVENTION.

Under Rule 24(b), an applicant for permissive intervention must show "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Perry*, 587 F.3d at 955 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996)). "In the context of permissive intervention," courts "analyze the timeliness element more strictly than [they] do with intervention as of right." *LULAC*, 131 F.3d at 1308. Further, "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id*. (quoting Fed. R. Civ. P. 24(b)(3)).

For the reasons explained above, *see supra* Part II, the District Court correctly found that CAA's motion was not timely. 1-AER-014. And, as explained above, *see supra* Part II.C, CAA's intervention will unduly delay and prejudice the original Parties by delaying ultimate resolution of this case.

## CONCLUSION

For all of these reasons, Plaintiffs respectfully request that this Court affirm the District Court's decision.

DATED:  June 29, 2026   DISABILITY RIGHTS ADVOCATES


By: */s/ Emily Roznowski*
   Thomas Zito
   Sean Betouliere
   Emily Roznowski
   Rwehyang Raika Kim


DATED:  June 29, 2026   PUBLIC INTEREST LAW PROJECT


By: */s/ Michael Rawson*
   Michael Rawson
   Craig Castellanet


Attorneys for Plaintiffs-Appellees

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-1648

I am the attorney or self-represented party.

**This brief contains** 9,317 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Emily Roznowski **Date** 6/29/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*