Case No. 26-1648

# In the United States Court of Appeals For the Ninth Circuit

**IAN SMITH**, *et al.*

*Plaintiff-Appellees,*

*v.*

**CITY OF OAKLAND**, and
**ROB BONTA, California Attorney General,**

*Defendants,*

*v.*

**CALIFORNIA APARTMENT ASSOCIATION,**

*Movant-Appellant.*

―――――――――――――

## APPELLANT'S REPLY BRIEF

―――――――――――――

On Appeal from the United States District Court
for the Northern District of California
The Honorable Jon S. Tigar, Presiding
District Court Case No. 4:19-cv-05398-JST

NIELSEN MERKSAMER LLP
Christopher E. Skinnell (SBN 227093)
2350 Kerner Boulevard, Suite 250
San Rafael, California 94901
Tel:  (415) 389-6800
Fax: (415) 388-6874
Em: cskinnell@nmgovlaw.com
*Attorneys for Movant-Appellant*

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................. 7

ARGUMENT ...................................................................................... 10

I. CAA's Intervention is Not "Superfluous"
Merely Because It Was Allowed to File an
Amicus Brief.......................................................................... 10

II. The District Court Erred in Denying
Appellant Intervention of Right .................................... 12

A. The District Court Erred in Holding CAA's
Motion Was Untimely ................................................ 13

1. Appellant properly sought to intervene
in a "new stage" of the litigation......................... 13

2. Plaintiffs' arguments with respect to
prejudice erroneously focus on the
wrong time period and are contrary to
the district court's findings on this
issue................................................................ 18

3. Especially given the lack of prejudice,
denying CAA's motion based on the
length of, and reason for, delay was
also error ........................................................ 21

B. The District Court Also Erred in Holding
That CAA's Interests Would be Adequately
Represented by the Attorney General and
the City of Oakland in Future Proceedings................. 27

1. The district court held CAA to an
unduly high standard for showing
inadequacy of representation ........................... 27

2

2. Even under the higher standard the district court was wrong to hold that the Attorney General and City of Oakland adequately represent CAA's interests.............................................. 31

3. There is no merit to Plaintiffs' argument that CAA would not "offer any necessary element to the proceeding" ....................................... 36

III. THE DISTRICT COURT ALSO ERRED IN DENYING APPELLANT PERMISSIVE INTERVENTION ................................ 37

CONCLUSION ...................................................................................... 39

CERTIFICATE OF COMPLIANCE (Form 8) ......................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arakaki v. Cayetano,*
324 F.3d 1078 (9th Cir. 2003) .................................................... 10, 28

*Arizonans for Official English v. Ariz.,*
520 U.S. 43 (1997) .................................................................... 25

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.,*
712 F.3d 1349 (9th Cir. 2013) ................................................... 37

*Citizens Allied for Integrity & Accountability, Inc. v. Miller,*
No. 1:21-cv-00367-DCN, 2022 WL 1442966 (D. Idaho May
5, 2022) ............................................................................. 28, 29, 30

*Day v. Apoliona,*
505 F.3d 963 (9th Cir. 2007) .................................................... 21

*Easley by Easley v. Snider,*
36 F.3d 297 (3d Cir. 1994) ...................................................... 35

*Fordyce v. City of Seattle,*
55 F.3d 436 (9th Cir. 1995) ...................................................... 11

*Forest Conservation Council v. United States Forest Serv.,*
66 F.3d 1489 (9th Cir. 1995) ............................................ 11, 28, 29, 30

*Freedom from Religion Found., Inc. v. Geithner,*
262 F.R.D. 527 (E.D. Cal. 2009), *aff'd in part and vac'd in
part on other grounds,* 644 F.3d 836 (9th Cir. 2011) ........................ 11

*FTC v. Apex Capital Grp., LLC,*
No. CV 18-9573(JFW)(JPRx), 2022 U.S. Dist. LEXIS
66086 (C.D. Cal. Mar. 10, 2022) .............................................. 38

*John Doe No. 1 v. Glickman,*
256 F.3d 371 (5th Cir. 2001) ................................................... 21, 26

4

*Kalbers v. United States DOJ*,
22 F.4th 816 (9th Cir. 2021) ....................................................... *passim*

*League of United Latin Am. Citizens v. Wilson*,
131 F.3d 1297 (9th Cir. 1997) ............................................................ 18

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................................... 12

*Mich. State v. Miller*,
103 F.3d 1240 (6th Cir. 1997) ............................................................ 28

*Prete v. Bradbury*,
438 F.3d 949 (9th Cir. 2006) ......................................................... 9, 27

*Sagebrush Rebellion, Inc. v. Watt*,
713 F.2d 525 (9th Cir. 1983) ......................................................... 9, 27

*Sequoia Forestkeeper v. La Price*,
No. 1:16-CV-0759 AWI JLT, 2017 WL 56655 (E.D. Cal.
Jan. 4, 2017) ..................................................................................... 28

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994) ....................................................... 28, 30

*Smith v. L.A. Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016) ................................................. *passim*

*Stallworth v. Monsanto Co.*,
558 F.2d 257 (5th Cir. 1977) ............................................................. 19

*League of United Latin Am. Citizens v. Wilson*,
131 F.3d 1297 (9th Cir. 1997) ............................................................ 18

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972) ...................................................................... 27, 30

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) ............................................................. 13

*United States v. Carpenter*,
298 F.3d 1122 (9th Cir. 2002) ..................................................... 20, 24

*United States v. City of L.A.*,
288 F.3d 391 (9th Cir. 2002) ................................................................. 11

*United States v. Oregon*,
745 F.2d 550 (9th Cir. 1984) ...............................................12, 13, 18

*United States v. Washington*,
86 F.3d 1499 (9th Cir. 1996) ......................................................... 7, 22

*W. Watersheds Project v. Haaland*,
22 F.4th 828 (9th Cir. 2022) .................................................................. 20

*Where Do We Go Berkeley v. Cal. DOT*,
32 F.4th 852 (9th Cir. 2022) ................................................................. 35

*Wonderful Nurseries LLC v. Agric. Lab. Rels. Bd.*,
No. 1:24-cv-01601-KES-CDB, 2025 LX 98253 (E.D. Cal.
May 13, 2025) ......................................................................................... 29

*Yniguez v. Arizona*,
939 F.2d 727 (9th Cir. 1991) ........................................................ 25, 26

## Statutes

Americans with Disabilities Act ................................................... *passim*

Costa-Hawkins Rental Housing Act ..................................................... 32

## Other Authorities

3B Moore's Federal Practice, ¶ 24.09-1[4] (1969) ............................... 27

Fed. R. Civ. Proc. 24 ..................................................................... *passim*

Wagstaffe Prac. Guide: Fed. Civ. Proc. Before
Trial § 16-IV (2026) ............................................................................ 19

## **INTRODUCTION**

It comes, of course, as little surprise that Plaintiffs would prefer to keep Oakland's landlords—the people who stand to be most directly affected by Plaintiffs' proposal to undermine Costa-Hawkins—out of this action, but CAA meets the test for intervention of right in this action or, at a minimum, should have been granted permissive intervention to ensure a vigorous defense of the Act. The district court below erroneously held otherwise.

As to intervention of right, the district court abused its discretion in finding that CAA's motion was untimely, because it applied the wrong legal test. Though under this Court's case law, "'[d]elay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, *not the date it learned of the litigation*,'" the district court focused on the latter instead of the former. *Kalbers v. United States DOJ*, 22 F.4th 816, 823 (9th Cir. 2021) (quoting *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996)) (emphasis added by *Kalbers* Court). Plaintiffs' various arguments as to why that was proper, including the claim that CAA waived this argument, are contrary to the law and to the record. The clock on CAA's intervention started running in October 2025, when the

association learned that the case would be entering a new phase of litigation that would focus squarely—for the first time—on the possible preemption of Costa-Hawkins, and which it also learned of the City of Oakland's express disavowal of any intent to defend Costa-Hawkins. Upon those discoveries, CAA moved quickly, and on approximately the same timeline the district court gave the Attorney General to decide whether to intervene. CAA agreed to abide by the briefing schedules that were already in place, to avoid disruption of the proceedings below.

Plaintiffs now contend, of course, that a ruling for CAA by this Court would substantially prejudice them, but the district court rightly found the risk of prejudice from CAA's motion to minimal, and Plaintiffs' contrary argument in this Court improperly focuses on the effect of CAA's intervention now, not the effect of its delay in seeking intervention last year. That is contrary to this Court's precedents.

The district court was also wrong to hold that the existing parties adequately represent the interests of CAA and its members. Though the City put on a staunch defense of its Rental Assistance Program as a general matter, and in doing so made some qualified arguments in its defense of its based on the existence of Costa-Hawkins, once the issue of Costa-Hawkins' validity was directly put into issue the City advised the

8

district court that "is in no position to defend against a modification to section 1954.52(a)(2)." Furthermore, it has not advanced most of the key arguments that CAA has sought to raise in defense of the constitutionality of the Act. Indeed, if the City's defense were really adequate, there would have been no reason to invite the Attorney General to participate.

As for the Attorney General, Plaintiffs continue to advance a far more stringent standard for proposed intervenors to overcome than is applicable here: "The burden of showing inadequacy of representation is minimal and 'is satisfied if the applicant shows that representation of its interests "may be" inadequate....'" *Prete v. Bradbury,* 438 F.3d 949, 956 (9th Cir. 2006) (quoting *Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 528 (9th Cir. 1983) (emphasis added)). Tellingly, neither the City nor the Attorney General opposed CAA's motion.

But even if the burden for which Plaintiffs argue were to apply, it is easily satisfied here, and the district court's contrary ruling was legal error. Indeed, it cannot be readily squared with its ruling on timeliness, which implicitly depends on the premise (contradicted by the record and the district court's own ruling) that Oakland was not adequately representing CAA's interests as early as 2021.

9

Finally, the district court abused its discretion in denying permissive intervention based solely on the mistaken timeliness ruling discussed above, and Plaintiffs' arguments to the contrary miss the mark.

As a statewide law of statewide significance, Costa-Hawkins deserves a vigorous defense, and neither the City nor the Attorney General are well-situated to provide it. Especially since "Rule 24 traditionally receives liberal construction in favor of applicants for intervention," *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), CAA should have been allowed to intervene. The district court's order denying intervention was error and should be reversed.

## ARGUMENT

### I. CAA's Intervention is Not "Superfluous" Merely Because It Was Allowed to File an Amicus Brief.

As a preliminary matter, it is worth addressing the notion that because the district court permitted CAA to file an *amicus* brief in connection with the briefing below, CAA's attempts to intervene are now "superfluous." (Appellees' Br. at 3.) That is not the case. This Court has "conclude[d] that the opportunity to file an *amicus* brief in no way substitute[s] for a formal opportunity to participate fully as an

10

intervening party in the litigation." *Fordyce v. City of Seattle, 55 F.3d 436, 442 (9th Cir. 1995)*. *See also Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1498 (9th Cir. 1995)* ("We reject appellees' claim that *amicus curiae* status is sufficient for appellants to protect their interests by expressing their concerns to the court regarding the propriety and scope of injunctive relief."); *Freedom from Religion Found., Inc. v. Geithner*, 262 F.R.D. 527, 530 (E.D. Cal. 2009) ("The filing of an amicus brief to the court seems a meager substitute [for intervention] in comparison, and would deny the potential intervenors a voice in key junctures of this litigation."), *aff'd in part and vac'd in part on other grounds*, 644 F.3d 836 (9th Cir. 2011).

For one thing, CAA was deprived of the ability (which it would have had as a party) to respond to an *amicus* brief filed by the Western Center on Law and Poverty—a group that advocates for rent control throughout California—that directly targeted the arguments raised in CAA's amicus brief. Moreover, CAA will be deprived of the ability to participate in any further proceedings that arise, to make further motions if warranted, such as a motion for reconsideration, for example, or—perhaps most importantly—to participate in or file an appeal. *United States v. City of L.A.*, 288 F.3d 391, 400 (9th Cir. 2002). Instead, CAA would have to rely

on the City of Oakland or the Attorney General to appeal. Accordingly, the limited grant of *amicus* status to CAA below does not render its appeal "superfluous."[1]

## II. THE DISTRICT COURT ERRED IN DENYING APPELLANT INTERVENTION OF RIGHT.

Under this Court's case law, district courts are to assess the criteria for intervention of right especially "leniently" due to the "likelihood" of "serious harm." *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) ("*Oregon I*"). The district court rightly concluded that two of the criteria are met—CAA and its members have significant protectible interests in this case, and those interests may be impaired by an adverse ruling. Those findings are not contested in this appeal. However, the

---

[1] Plaintiffs argue, in a footnote, that consideration of any appeal would be premature, and that it's not clear that CAA would have sufficient Article III standing to appeal in the absence of an appeal by one of the existing defendants. As to the former argument, if Plaintiffs' pending supplemental motion for summary judgment is granted, an appeal is the most likely next stop, so it is far from premature. As to the latter, CAA's members undeniably will suffer an injury in fact from an adverse ruling—a significant economic injury attributable to the imposition of rent controls that would not otherwise apply. That injury would be directly traceable to the judgment in this case, and it would likely be redressed by a favorable ruling on appeal. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Because CAA's members would have standing to appeal, CAA has associational standing to proceed on their behalf.

court still denied intervention on the grounds that (1) CAA's motion was purportedly untimely, and (2) the City of Oakland and Attorney General will adequately protect CAA's interests. Those two holdings were error, and Plaintiffs' arguments to the contrary lack merit.

### A. The District Court Erred in Holding CAA's Motion Was Untimely.

#### 1. Appellant properly sought to intervene in a "new stage" of the litigation.

Plaintiffs do not and cannot deny that this Court has held "a party's interest in a specific phase of a proceeding may support intervention at that particular stage of the lawsuit," notwithstanding substantial prior litigation activity relating to other issues. *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). *See also Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 856 (9th Cir. 2016) (reversing finding of untimeliness based on earlier stages of litigation); *Oregon I*, 745 F.2d at 552 (same). Instead, Plaintiffs dispute the premise that CAA sought to intervene at a "new stage" in the proceedings below. They contend that CAA's motion came "in the midst of dispositive motion practice after the District Court had made a partial ruling but before it had issued its final

13

decision." (Appellees' Br. at 24.) That characterization is impossible to square with the actual course of the litigation, however.

Here, CAA's sole interest in the litigation is in the constitutionality of Costa-Hawkins, *i.e.,* the question of whether it is actually preempted by the ADA, and that issue had not previously been ruled upon or substantively joined by the parties or the court when CAA sought to intervene. Indeed, the whole purpose of the briefing schedule set by the district court in August 2025 was to tee up that issue for the first time, which is precisely why the court invited the Attorney General to intervene at that point, when it had previously declined to do so.

Though Plaintiffs certainly mentioned the Costa-Hawkins issue in their complaint, none of the prior motions, even including the parties' cross-summary judgment motions, squarely addressed the question of whether Costa-Hawkins should actually be preempted in this specific case. They merely averred that, as a general matter, state laws can be subject to preemption by the ADA in appropriate cases. As the district court expressly observed in ruling on those summary judgment motions, "while Plaintiffs are correct that the ADA *can* preempt state law, their [summary judgment] brief contains no analysis of why preemption is appropriate *in this case.* They acknowledged as much at the hearing on

14

these motions and offered to submit additional briefing." (2-AER-218-219.) It is that stage of additional briefing that CAA sought to join.

Prior to the grant of partial summary judgment to Plaintiffs, in which the chief focus was on whether the *prima facie* elements of an ADA Title II disparate impact discrimination claim had been made out, it was entirely plausible that the case would be resolved without Costa-Hawkins' preemption ever becoming an issue. That prospect disappeared in the fall of 2025, which is when CAA promptly sought to intervene.

Plaintiffs' claim that the litigation was not entering a new stage is especially hard to square with fact that, at the same time CAA sought to intervene, the district court invited the Attorney General to do so. Again, in denying the City's motion to dismiss, the district court had expressly refused to certify Costa-Hawkins' constitutionality to the Attorney General because "the preemption question [wa]s not actually before the Court." (3-AER-364.) Yet, after granting the Plaintiffs summary judgment with respect to the *prima facie* elements of their ADA claim, the district court determined that the time for participation by the Attorney General had finally come. It recognized that because the focus of the suit would shift to the constitutionality of Costa-Hawkins, *i.e.,* would enter a new phase of the litigation, it was appropriate to invite the

15

Attorney General to participate where it had not seen fit to do so before. (2-AER-217-220.)

Likewise supporting this conclusion is the fact that when the Plaintiffs themselves essentially invited the Attorney General to intervene, in 2019 (*see* 1-SER-227-229), he declined to do so, but when the district court's order was sent to him in 2025, he, too, determined that circumstances had sufficiently changed to warrant his participation.

Also supporting the view that CAA sought to participate in a new and different stage of the litigation is the fact that it expressly disclaimed an intention to revive issues previously decided, like application of the *prima facie* elements under the ADA. It sought, and seeks, merely to participate in the litigation to address the constitutionality of Costa-Hawkins, which is a matter that has not previously been ruled on. In other words, it did not—and does not—seek to "reopen [years] of litigation." *Smith, 830 F.3d at 856*. Especially given CAA's conceded interests in this discrete issue, the district court erred in concluding that this factor weighed against intervention.

Plaintiffs additionally contend that CAA "waived" this argument regarding the new phase of proceedings because it was purportedly not raised in the district court. That is simply not the case. CAA argued at

length that it had chosen to intervene at the point it did because the issue of Costa-Hawkins' constitutionality was just now being joined for the first time (and because the City had only recently disclaimed an intention to defend that law, another changed circumstance):

> **The earlier stages of this litigation did not directly put the question of Costa-Hawkins' constitutionality/ preemption into issue, nor did it decide that issue.** It is true that the complaint and the prior motions *noted* Plaintiffs' allegation that Costa-Hawkins was preempted, but the issue was not previously presented to the Court for resolution—as the Court itself observed in previously refusing to certify the question to the Attorney General in *Smith v. City of Oakland*, 612 F. Supp. 3d 951, 967 n.9 (N.D. Cal. 2020). The Court's subsequent orders, prior to last August, barely mentioned Costa-Hawkins. See *Smith v. City of Oakland*, 339 F.R.D. 131, 135 (N.D. Cal. 2021) (order granting class certification); *Smith v. City of Oakland*, No. 19-cv-05398-JST, 2021 LX 40165 (N.D. Cal. Sep. 3, 2021) (denying the City's motion for judgment on the pleadings). Indeed, the issue might never have come up if the Court had ruled in the City's favor at one of the prior stages of the litigation.
>
> **Now, however, the issue that affects CAA's interests, and those of its members, is being squarely presented**, which is why the Court invited the Attorney General to intervene now, despite the passage of six years of litigation.

(1-SER-082-083 [CAA's reply] [boldface added].)[2]

---

[2] *See also* 2-AER-200-201 (CAA's motion, raising similar points); 2-AER-172-173 (Decl. of Whitney Prout, CAA's Executive Vice President of Legal Affairs) (as of 2021, "there appeared to be no direct threat to Costa-Hawkins," but after "discover[ing] the [district] Court's ruling on summary judgment and the order certifying the legality of Costa-

17

Finally, *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) ("*LULAC*"), is not to the contrary. There is no indication in that decision that the underlying litigation had entered a "new stage" in which issues not previously presented were joined in earnest for the first time. Rather, the intervenor's chief argument on this prong was merely that "'no trial date had been set for a final determination of Proposition 187's fate.'" *Id.* at 1303 (quoting appellant's brief).

> **2. Plaintiffs' arguments with respect to prejudice erroneously focus on the wrong time period and are contrary to the district court's findings on this issue.**

With respect to prejudice to the existing parties, which this Court has previously to be "'the most important consideration in deciding whether a motion for intervention is untimely,'" *Smith*, 830 F.3d at 857 (quoting *Oregon I*, 745 F.2d at 552), the district court concluded that the prejudice of allowing CAA to intervene would be "minimal," consisting of "a slight delay in resolving the case on the merits" of "a mere two weeks."

---

Hawkins to the Attorney General[,] I promptly consulted with CAA executive leadership and our litigation counsel herein and the Board of Directors to obtain approval to seek intervention *in light of the apparent shift in focus of this case*.") (emphasis added).

18

(1-AER-008.) That finding "weighs heavily in favor of timeliness." *Kalbers*, 22 F.4th at 826.

Nevertheless, Plaintiffs insist that, were this Court to reverse the district court's order and allow intervention *now*, they would be prejudiced because additional proceedings have taken place in the months since the district court ruled. This focus on the present, however, is misplaced.

"[T]he relevant issue is not how much prejudice would result from allowing intervention, but rather how much prejudice would result from the would-be intervenor's failure to request intervention as soon as he knew or should have known of his interest in the case.'" *Smith*, 830 F.3d at 857 (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir. 1977)). As such, prejudice is properly measured as of the time the intervenor files its motion. *See* Fed. R. Civ. Proc. 24(a) (requiring a "timely motion"). "[F]or purposes of timeliness, delay to the trial or ultimate resolution of the case is irrelevant." Wagstaffe Prac. Guide: Fed. Civ. Proc. Before Trial § 16-IV (2026) (citing *Smith*, 830 F.3d at 858).

The prejudice that is "relevant," as the district court found, is minimal in this case. By contrast, the supposed prejudice that is the focus of Plaintiffs' briefing is not prejudice caused by CAA's delay in seeking to

19

intervene; it is prejudice caused by the district court's erroneous denial of intervention. If that were the proper focus, an order denying intervention would almost never be subject to reversal so long as the case continued to proceed while the denied intervenor appeals. Obviously, that is not the case, as this Court has repeatedly overruled such denials in the past. *See, e.g., Kalbers,* 22 F.4th at 819 (reversing denial); *Smith,* 830 F.3d at 864 (same); *W. Watersheds Project v. Haaland,* 22 F.4th 828, 831 (9th Cir. 2022) (same); *United States v. Carpenter,* 298 F.3d 1122, 1125 (9th Cir. 2002) (same).

It also bears recalling, of course, that CAA sought to minimize even that prejudice, by moving to expedite this appeal—a motion Plaintiffs successfully opposed, arguing that there was no urgency because "Should this Court ultimately decide in CAA's favor … it could order the District Court to permit CAA to file the single summary judgment brief CAA requested below along with supplemental reply briefing and oral argument. [Citation.] While this may be slightly less convenient for all involved, it is hardly an irreparable harm." (9th Cir. Dkt. No. 8, pp. 8-9.)

Plaintiffs are also concerned that, if this Court rules in CAA's favor, CAA might seek reconsideration of an adverse ruling on Costa-Hawkins preemption below, but, for the same reasons, that is not the relevant

20

prejudice for purposes of timeliness either. That is "prejudice [that] would result from allowing intervention," not from intervenor's delay in seeking intervention. *Cf. Day v. Apoliona,* 505 F.3d 963, 965 (9th Cir. 2007) (granting motion to intervene on appeal, even though it would enable intervenor to petition for rehearing).

### 3. Especially given the lack of prejudice, denying CAA's motion based on the length of, and reason for, delay was also error.

As this Court has held, "'timeliness is not a tool of retribution to punish the tardy would-be intervener, but rather a guard against prejudicing the original parties by the failure to apply sooner.'" *Kalbers,* 22 F.4th at 823 (quoting *John Doe No. 1 v. Glickman,* 256 F.3d 371, 375 (5th Cir. 2001)). Thus, in the absence of meaningful prejudice to the existing parties, and in light of the fact that the case is entering a "new stage" in the proceedings, this factor should not suffice, by itself, to sustain the trial court's ruling, even if the relevant delay truly was four years. That is especially the case given that CAA sought to intervene at the same time that another new party—the Attorney General—was permitted to do so.

Yet, the district court's ruling drastically overstates the relevant delay. It was not four years but a mere few weeks. The court mistakenly focused on the gap between the date "CAA's Executive Vice President of Legal Affairs *learned about this litigation*" in 2021 and the time its motion was filed in November 2025. (1-AER-012, emphasis added.) Yet, it is black letter law that "'[d]elay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, *not the date it learned of the litigation.*'" *Kalbers*, 22 F.4th at 823 (quoting *United States v. Wash.*, 86 F.3d at 1503) (italics added by *Kalbers*).

Applying the correct rule, the relevant period of delay was approximately a single month—from mid-October 2025, when CAA's EVP learned, upon reading the district court's summary judgment order, that the City would no longer defend the law, until mid-November.

Plaintiff argues, however, and the district court held, that CAA is barred from arguing that the relevant period began in October 2025, because it purportedly did not raise this point until its reply brief below. Yet, in its moving papers CAA explicitly argued that its delay in seeking intervention was "minimal," consisting of just a few weeks commencing with the time CAA learned of the summary judgment ruling, because

that is when it first knew that its interests were threatened, exactly as it argues here. (2-AER-202-203.) It also argued that the City's representation was inadequate precisely because "the City has expressly disclaimed any intention" of defending Costa-Hawkins, in 2025. (*Id.*)

In opposition, Plaintiffs focused instead on CAA's discovery of the litigation four years earlier. (1-SER-097-098.) CAA replied that Plaintiffs' attempt to move the temporal goalposts—to start counting from the earlier date—was improper because the City had previously been defending CAA's interests. (2-SER-079-082.) In short, CAA argued all along that the relevant delay should be counted from its discovery of the 2025 summary judgment order, rather than from its discovery of the litigation in 2021. It did *not* argue this for the first time in reply.

In this Court, Plaintiffs continue to focus on the wrong starting date, and their argument that "CAA knew that the economic interests of its members were at issue in this case when it learned of the litigation in February 2021, and it should have moved to intervene at that time" misses the mark for several reasons. (Appellees' Br. at 20.) For one thing, the issue is not whether the economic interests of CAA's members were implicated in 2021; it was whether the existing parties were adequately defending those interests. Prior to the City's affirmative disavowal of a

23

willingness to defend Costa-Hawkins, in April 2025, and CAA's subsequent discovery of that disavowal when it found the district court's summary judgment ruling in October 2025, CAA was entitled to rely on the presumption that the government would defend the law. *Carpenter, 298 F.3d at 1124*.

And while the district court sought to distinguish *Carpenter* on the ground that it did not establish a "presumption that a *city* government will necessarily defend a *state* law" (1-AER-010, lines 20-28, italics in original), Plaintiffs tellingly make no effort to defend that conclusion in their brief, to cite case law supporting that distinction, or to deny the fact that there *is* case law—cited in Appellant's Opening Brief (*see* page 35 n.8)—applying the presumption in precisely that circumstance.

Furthermore, even aside and apart from the presumption of adequacy, in this case there was *the fact* of actual defense by the City from 2019 to 2025. Plaintiffs argue that it was well-documented that City officials opposed Costa-Hawkins as a policy matter, going clear back to at least 2016, but it is not uncommon for public entities to defend duly-enacted laws that they personally disagree with—that is why the presumption of adequacy exists. And, as the district court acknowledged, until its affirmative disavowal of a willingness to continue doing so, "the

City *ha[d]* consistently defended CAA's members' economic interests in arguing that the ADA has not been violated and the existing RAP should remain unmodified..." (1-AER-012; emphasis added.) Indeed, the City expressly relied on Costa-Hawkins in support of its motion to dismiss, arguing (for example), that "modifying the [RAP] to apply rent control to newer units, in violation of state law, is not a reasonable modification" under the ADA. (*See* 3-AER-392, lines 21-22.) That changed in 2025, and the change warranted CAA's efforts to intervene.

Instructive here is *[Yniguez v. Arizona, 939 F.2d 727 (9th Cir. 1991)](#)*.[3] In *Yniguez,* a public advocacy group that had sponsored a ballot measure sought to intervene after a judgment enjoining the measure was entered, because the Governor—who had vigorously opposed the measure in the first place—announced her intention not to appeal the unfavorable ruling. Prior to that, however, the Court held that the proponents were entitled to rely upon the state's defense of the measure and "were not required to monitor the litigation closely to see if the

---

[3] *Yniguez* was reheard *en banc*, and the *en banc* court "reinstated the panel opinion with minor alterations." *[Arizonans for Official English v. Ariz.,](#)* [520 U.S. 43, 62 (1997)](#). The Supreme Court subsequently vacated the *en banc* decision and remanded with instructions to dismiss the case as moot, because the plaintiff had left public employment while the appeal was pending. *[Id.](#)* [at 73](#).

government was asserting a position which, if accepted, could prejudice their interests." *Id.* at 735. Likewise, here, CAA's Executive Vice President reviewed the City's early pleadings and determined the City was, in fact, defending CAA's interests. (2-AER-172.) She was not thereafter required "to monitor the litigation closely"; she could presume the defense would continue. Upon subsequently learning conditions had changed, however, CAA moved with alacrity to defend its interests.

Given these circumstances, CAA was not obliged to seek intervention sooner, and, in fact, had it done so in 2021 the district court might have denied the motion. After all, this Court seeks to "'discourage premature intervention' that unnecessarily 'squander[s] scarce judicial resources and increase[s] litigation costs.' … Accordingly, while [it] construe[s] the intervention motions that [it] receive[s] liberally … [the Court] do[es] not require hasty intervention." *Kalbers,* 22 F.4th at 823 (quoting *John Doe No. 1,* 256 F.3d at 376-77). It was only at the point that CAA learned the City had formally renounced an ability and intent to fully defend Costa-Hawkins and the Attorney General was invited to intervene (only to forgo a defense of Costa-Hawkins too) that CAA's intervention became appropriate.

26

**B.** **The District Court Also Erred in Holding That CAA's Interests Would be Adequately Represented by the Attorney General and the City of Oakland in Future Proceedings.**

"In assessing whether a present party will adequately represent an intervenor-applicant's interests, [courts must] 'consider several factors, including whether [a present party] will undoubtedly make all of the intervenor's arguments, whether [a present party] is capable of and willing to make such arguments, and whether the intervenor offers a necessary element to the proceedings that would be neglected.' [Citation.]" *Prete, 438 F.3d at 956* (quoting *Sagebrush Rebellion, 713 F.2d at 528* (emphasis added)).

No existing party will adequately represent the interests of CAA and its members here, and the district court was wrong to hold otherwise.

**1.** **The district court held CAA to an unduly high standard for showing inadequacy of representation.**

The Supreme Court has held that "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)* (quoting 3B Moore's Federal Practice, ¶ 24.09-1[4] (1969)).

27

In response to Appellant's argument that the district court applied an unduly stringent standard in determining whether CAA had shown that the City's and Attorney General's representation "may be" inadequate to protect CAA's interests, Plaintiffs respond that when the government and a would-be intervenor share the same "ultimate objective," there is a presumption of adequacy that the intervenor must overcome by instead making a "compelling" showing of inadequacy. Yet, that presumption applies only when "the applicant's interest is *identical* to that of one of the present parties," including the government, litigating on behalf of the public good. *Arakaki*, 324 F.3d at 1086 (emphasis added).

That is not the case here, and Plaintiffs' barebones argument that there is no meaningful difference between the two tests is belied by a number of cases, cited in Appellant's Opening Brief, including *Forest Conservation Council*, 66 F.3d at 1499, *Mich. State v. Miller*, 103 F.3d 1240, 1245-46 (6th Cir. 1997) (applying Ninth Circuit case law), *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994), *Citizens Allied for Integrity & Accountability, Inc. v. Miller*, No. 1:21-cv-00367-DCN, 2022 WL 1442966, at *12 (D. Idaho May 5, 2022), and *Sequoia Forestkeeper v. La Price*, No. 1:16-CV-0759 AWI JLT, 2017 WL 56655, at *2-4 (E.D. Cal. Jan. 4, 2017).

28

Plaintiffs simply ignore all these cases, but they stand squarely for the proposition that, even when both a would-be intervenor and the government share a "related but separate interest" in the continued vitality of a state enactment, they do not have "identical" interests that would impose a heightened burden on the intervenor. *Citizens Allied for Integrity & Accountability, Inc.*, No. 1:21-cv-00367-DCN, 2022 WL 1442966, at *12 (distinguishing Ninth Circuit cases applying the heightened standard Plaintiffs advocate for). Such a circumstance arises when, as here, "the applicant asserts a personal interest that does not belong to the general public.'" *Forest Conservation Council, 66 F.3d at 1499* (quoting 3B Moore's Federal Practice, ¶ 24.07[4] at 24-78 (2d ed. 1995)). *See also Wonderful Nurseries LLC v. Agric. Lab. Rels. Bd.*, No. 1:24-cv-01601-KES-CDB, 2025 LX 98253, at *16-17 (E.D. Cal. May 13, 2025) (also distinguishing cases applying the heightened burden, finding a lack of adequate representation by the government, and granting intervention of right because the "UFW holds narrower and more parochial interests than the ALRB").

In this case, the City and the Attorney General have, at best, an abstract interest in the continuing enforceability of state law, and they represent constituencies. CAA and its members, however, have a direct

29

and unique economic interest in the continued enforceability of Costa-Hawkins as it currently stands. It is their oxen that will be gored if judgment is entered in Plaintiffs' favor. In such circumstances, proposed intervenors are not subject to the heightened standard that the district court applied. *See Sierra Club, 18 F.3d at 1208* ("The government must represent the broad public interest, not just the economic concerns of the timber industry. Given the minimal burden on the movants to satisfy this requirement, we conclude that the government's representation of the intervenors' interest is inadequate."); *Forest Conservation Council, 66 F.3d at 1499* (reversing denial of intervention and finding inadequacy of representation because "[t]he Forest Service is required to represent a broader view than the more narrow, parochial interests of the State of Arizona and Apache County.").

In short, "the normal standard … applies" here, *Citizens Allied for Integrity & Accountability, 2022 WL 1442966, at \*15-16*, and "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich, 404 U.S. at 538 n.10*. Plaintiffs conspicuously do not argue that if this less stringent standard applies CAA fails to meet it.

30

**2. Even under the higher standard the district court was wrong to hold that the Attorney General and City of Oakland adequately represent CAA's interests.**

Even if Plaintiffs were correct that the higher standard applied, the district court's holding that CAA failed to meet that standard is unsustainable on the record below, *especially* after the Attorney General filed his lone brief in this case.

As for the Attorney General, Plaintiffs make three arguments, all of them unmeritorious: (1) CAA "waived" any reliance on Attorney General Bonta's prior anti-Costa-Hawkins legislative advocacy, (2) the Attorney General did not forego a defense of the Act but merely suggested a narrowed remedy, and (3) CAA did not adequately describe the arguments that it intended to advance that the Attorney General would not.

As to the first, CAA is not relying solely on the fact that Mr. Bonta previously proposed hostile amendments to Costa-Hawkins to establish inadequacy. Until the Attorney General filed his actual brief, CAA reasonably assumed that, since he had accepted the invitation to intervene, he would feel a duty to defend a duly-enacted state law, notwithstanding his personal policy preferences. But the fact of his

31

legislative hostility nevertheless provides useful context to explain why the Attorney General refused to defend Costa-Hawkins below.

And refuse he did, notwithstanding Plaintiffs' attempt to whitewash that fact. Their discussion conveniently elides the fact that the "Statement of California Attorney General Regarding Certified Constitutional Question [157]" (2-AER-115-135), explicitly concedes, "[I]f the ADA requires an expansion of the RAP's cutoff date, then **the Costa-Hawkins Act is likely preempted** by the ADA" (2-AER-127 [emphasis added]), and that it makes no attempt to argue that the ADA does not require an expansion of the RAP's cutoff date.

Having made those fundamental concessions, the Attorney General then proceeded to propose an alteration to Costa-Hawkins—a 15-year rolling "new construction" exemption—that is uncannily similar to the amendments to Costa-Hawkins that Mr. Bonta proposed as a legislator, which CAA successfully opposed in 2019. Plaintiffs have latched onto this proposal as evidence of the reasonableness of "modifying" or "altering" (*i.e.*, nullifying) Costa-Hawkins' new construction exemptions, by bringing new units under Oakland's rent control limits. (*See* 2-AER-097-100.) Indeed, they have enthusiastically endorsed the Attorney General's proposal as even "better" than the modification that they had previously

32

proposed. (2-AER-089, lines 8-20.) In short, the Attorney General did not merely propose a "narrowed remedy," he proposed a wholesale revision of Costa-Hawkins that the Legislature rejected when he previously proposed it.

Regarding the contention that CAA did not fully explain how its arguments would differ from the Attorney General's (*see* 1-AER-013, lines 6-8), CAA made it abundantly clear that it planned to forcefully defend the legality of Costa-Hawkins as-is, which the Attorney General has not done (*see* 2-AER-113-114). Again, there is no basis for requiring CAA to fully brief the merits of the Costa-Hawkins issue as part of its motion to intervene, when the whole purpose of its motion was to seek to participate in the merits briefing on the schedule jointly proposed by the parties in the event intervention was allowed (*see* 2-AER-141). Requiring that level of elaboration puts the cart before the horse.

As for the City of Oakland, Plaintiffs cannot deny that in mid-2025 the City informed the district court that it "is in no position to defend against a modification to [Costa-Hawkins under the ADA]" due to the City Council's opposition to Costa-Hawkins (2-AER-268). That alone undermines the premise that the City will adequately defend CAA's interests. The City should be taken at its word, and it is because the

district court did take it at its word that the Attorney General was invited in.

Nor is there any merit to Plaintiffs' contention that the City has made all of CAA's arguments in defense of Costa-Hawkins. It is true that in opposing the Plaintiffs' supplemental motion the City argued that Plaintiffs did not carry their burden of proof in establishing that Costa-Hawkins should be preempted, but even then, it offered the caveat that "[b]ecause Costa Hawkins is a state law, and not endorsed by the City, the City is not well suited to address the preemption question." (2-AER-059, lines 8-10.) As such, it does not advance CAA's core arguments: that Costa-Hawkins' new construction requirements are themselves reasonable—indeed, are in line with the vast majority of rent-control policies nationwide; that they serve valuable public policy purposes in a state facing a crisis-level, multi-decade housing shortage; and that they are inseparable from the many other housing policy choices that the State has made. (2-AER-016-049.)

Moreover, though the City's brief notes that "the proposed modification would change the established expectations of participants, especially tenants and owners of buildings that suddenly become rent-controlled" (2-AER-069), it does not address the *extraordinary* costs of the

proposed modification to property-owners who would be required to implement it—a fact that is relevant in the context of a "reasonable modification" analysis to determining whether preemption under the ADA is appropriate. By contrast, CAA's brief carefully examines Plaintiff's own evidence to demonstrate that the proposed modification carries a projected price tag of $90 million annually. (*See, e.g.,* 2-AER-034.)

These arguments are central to a full-throated defense of Costa-Hawkins, because the effect that Plaintiffs' proposed modifications would have on the purposes of Costa-Hawkins is essential to both of the main questions presented by Plaintiffs' motion: first, whether the proposed modifications are "reasonable"[4] and second, whether they would "fundamentally alter" the State's housing programs.[5] Plaintiffs argue otherwise in their brief (*see* pages 44-45), but (1) they are wrong, as CAA

---

[4] *See, e.g., Where Do We Go Berkeley v. Cal. DOT, 32 F.4th 852, 862 (9th Cir. 2022).*

[5] *See, e.g., Easley by Easley v. Snider, 36 F.3d 297 (3d Cir. 1994)* (proposal to expand an existing state attendant-care program so that individuals with cognitive disabilities could participate with the assistance of surrogates was a fundamental alteration because it would undermine a core legislative objective of the program, which was to help individuals with physical disabilities maintain independence and potentially enter the workforce).

has argued to the district court (*see* 1-SER-048-051), and (2) they are asking this Court to prejudge the merits of their claims below, which are not properly at issue in this appeal.

Finally, it is worth reiterating the inherent inconsistency of the district court's ruling on this point. Its adverse ruling on timeliness depends on the premise that the City was *not* adequately representing CAA's interests in 2021, so CAA should have intervened at that point, even though the City had not expressed a refusal to defend Costa-Hawkins at the time. Yet now that the City has explicitly disavowed Costa-Hawkins' defense, somehow its representation of CAA's interests *is* adequate. These positions simply cannot be squared with one another.

### 3. There is no merit to Plaintiffs' argument that CAA would not "offer any necessary element to the proceeding."

Finally, Plaintiffs reprise their argument below that CAA would offer no "necessary element" to the proceedings in this case. Yet, as discussed in the last section, CAA is trying its level best to offer a defense of Costa-Hawkins' legality, which the Attorney General has declined to do altogether, and to present fundamental arguments regarding the "reasonableness" of Plaintiffs' proposed modifications and the negative

36

impacts that those modifications would have on the fundamental legislative program—arguments that the City has not, and apparently cannot, make. Indeed, the district court's ruling on this point cannot readily be squared with its August 25 order, in which the court "agree[d] that the City should not be required to defend a state law *the purposes of and policies behind which the City may not share or understand.*" (2-AER-219 [emphasis added].)

Costa-Hawkins—and the landlords who benefit from its existence, which includes CAA's members—are entitled to a vigorous defense of the law. The Attorney General has not provided such a defense, and the City of Oakland has expressly disclaimed a desire to do so. CAA's involvement will, therefore, provide a necessary element to further proceedings.

## III. THE DISTRICT COURT ALSO ERRED IN DENYING APPELLANT PERMISSIVE INTERVENTION.

"Generally, permissive intervention under Rule 24(b) requires '(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" *Blum v. Merrill Lynch Pierce Fenner & Smith Inc., 712 F.3d 1349, 1353 (9th Cir. 2013)*. Additionally, "[i]n exercising its discretion, the Court must consider whether the intervention will unduly

37

delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. Proc. 24(b)(3).

Plaintiffs do not dispute the fact that prongs (1) and (3) are met here, and their argument on the grounds of timeliness fails for the same reason that it fails with respect to intervention of right. *See FTC v. Apex Capital Grp., LLC*, No. CV 18-9573(JFW)(JPRx), 2022 U.S. Dist. LEXIS 66086, at \*17 (C.D. Cal. Mar. 10, 2022) ("The same timeliness factors apply to requests for intervention as of right and permissive intervention") (citing *LULAC*, 131 F.3d at 1308). CAA moved promptly once it became clear that its interests were threatened and that the City of Oakland (and the Attorney General) would no longer adequately defend them.

As for Plaintiffs' argument concerning prejudice, the district court did not base its denial of permissive intervention on any purported prejudice, having found any potential prejudice to be minimal, and, again, Plaintiffs are unduly focused on prejudice created by the improper denial of CAA's motion rather than any delay attributable to CAA itself.

38

## CONCLUSION

The district court's ruling on timeliness was wrong because the City of Oakland was adequately protecting CAA' interests until mid-2025. Thus, CAA was not obliged to (and very possibly would not have been allowed to) intervene during that time. When that changed—when it became clear that no party would defend CAA's interests in the enforceability of Costa-Hawkins moving forward—CAA moved promptly to intervene to defend those interests. Likewise, the district court's conclusion that the existing defendants will adequately represent CAA's interests going forward cannot be squared with the demonstrable fact that they are not and will not do so.

For these reasons, the district court's order denying CAA's motion to intervene should be reversed and this case should be remanded to allow CAA to participate in full in the proceedings relating to Plaintiffs' supplemental motion for summary judgment and any subsequent appeal.

Respectfully submitted,

Dated: July 20, 2026          NIELSEN MERKSAMER LLP

By: /s/ Christopher E. Skinnell

*Attorneys for Movant-Appellant*
CALIFORNIA APARTMENT ASSOCIATION

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 26-1648

I am the attorney or self-represented party.

**This brief contains** | 6,998 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated | |.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Christopher E. Skinnell | **Date** | July 20, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*

## PROOF OF SERVICE

I am employed in the County of Marin, State of California. I am over the age of 18 and not a party to the foregoing cause of action. My business address is, 2350 Kerner Boulevard, Suite 250, San Rafael, California 94901.

On July 20, 2026, I caused the following documents, described as:

- **APPELLANT'S REPLY BRIEF**

to be served on the following individuals:

| | |
|---|---|
| Sean Betouliere<br>sbetouliere@dralegal.org<br>DISABILITY RIGHTS ADVOCATES<br>2001 Center St., Third Floor<br>Berkeley, CA 94704-1204<br>Tel: (510) 665-8644 | Michael Rawson<br>mrawson@pilpca.org<br>Craig Castellanet<br>ccastellanet@pilpca.org<br>PUBLIC INTEREST LAW PROJECT<br>449 15th Street, Suite 301<br>Oakland, CA 94612-06001<br>Tel: (510) 891-9794 |
| Emily Roznowski (*pro hac vice*)<br>eroznowski@dralegal.org<br>Raika Kim (*pro hac vice*)<br>rkim@dralegal.org<br>DISABILITY RIGHTS ADVOCATES<br>300 S. Wacker Dr., Floor 32<br>Chicago, IL 60606-6680<br>Tel: (332) 217-2319 | KEVIN P. MCLAUGHLIN<br>Supervising Deputy City Attorney<br>kmclaughlin@oaklandcityattorney.org<br>One Frank H. Ogawa Plaza, 6th Floor<br>Oakland, CA 94612<br>Tel: (510) 238-2961<br>Fax: (510) 238-6500<br>*Attorneys for Defendant City of Oakland* |

X   **BY AMCS TRANSMISSION**: By transmitting true and correct copies through the Court's electronic e-filing (AMCS) system.

I also caused those documents to be served on the following parties:

| MICHAEL J. QUIRK | SEAN CLINTON WOODS |
|---|---|
| Deputy City Attorney | Deputy Attorney General |
| mquirk@oaklandcityattorney.org | Clint.Woods@doj.ca.gov |
| One Frank H. Ogawa Plaza, 6th Fl. | 455 Golden Gate Ave, Ste 11000, |
| Oakland, CA 94612 | San Francisco, CA 94102-7020 |
| Tel: (510) 238-2961 | Telephone: (415) 510-3807 |
| *Attorneys for Defendant City of Oakland* | *Attorneys for Attorney General, State of California* |

X  **BY ELECTRONIC SERVICE**: By transmitting true and correct copies by e-mail to the above party(ies) at the above email addresses; and

X  **BY FEDERAL EXPRESS:** By following ordinary business practices and placing for pickup by FEDERAL EXPRESS at 2350 Kerner Blvd., Suite 250, San Rafael, California 94901 on July 20, 2026, copies of the above documents in an envelope or package designated by FEDERAL EXPRESS with delivery fees paid or provided for.

Executed in San Rafael, California, on July 20, 2026. I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Christopher E. Skinnell